(68 South. 409)

No. 21077.

Succession of PERCIVAL.

(April 12, 1915. Rehearing Denied May 10, 1915.)

*(Syllabus by the Court.)*

1. CHARITIES ⬤═▷13 — BEQUEST — DONATION FOR PIOUS USES.

The following bequest in a will is a donation of the property described therein for pious uses, favored by the laws of Louisiana, viz.:

"To the Free Church of the Annunciation, situated at the corner of Camp and Race streets, New Orleans, La., I leave my building, corner of St. Charles street and Gravier street, now occupied by the Western Union Telegraph Company. The income only from this property can be used for the benefit and improvement of said church. If it be sold, the amount obtained from the sale must be invested and the income from said investment only must be used. The capital must never be touched."

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 37; Dec. Dig. ⬤═▷13.]

2. CHARITIES ⬤═▷13 — LEGACY TO RELIGIOUS ORGANIZATION—OPERATION OF STATUTE.

The fact that the legatee is a religious organization, and, as such, a charitable institution, brings the case within the terms and provisions of Act No. 124 of 1882, encouraging donations for educational, charitable, or literary purposes, or to such institutions, and exempting them from the laws relating to fidei commissa and prohibited substitutions.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 37; Dec. Dig. ⬤═▷13.]

3. WILLS ⬤═▷473—BEQUEST—VALIDITY—SUBSTITUTION.

Stipulations in a will requiring the legatee, a religious and charitable institution, to pay a certain sum per month to a faithful maid of the testatrix, and to pay her doctor's bills, etc., as long as the beneficiary shall live, and requiring the payment of a stated sum of money to another beneficiary from the income of the legacy before the legatee can receive any benefit from such income, do not create a substitution. In so far as such charges may be regarded as fidei commissa, they are to be reputed not written, but they do not invalidate the main bequest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 992–995; Dec. Dig. ⬤═▷473.]

4. WILLS ⬤═▷350 — SUIT TO ANNUL — JUDGMENT—ISSUES.

In a judgment dismissing the plaintiffs' suit to annul a will, rejecting the demand on the grounds that the charges imposed upon the legatee do not create a substitution, and that fidei commissa do not annul the testament, the court has no authority to annul the stipulations, when there is no contest between or among the defendants as to the rights of the defendant beneficiaries or obligations of the defendant legatee.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 807; Dec. Dig. ⬤═▷350.]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

In the matter of the succession of Mary Percival. Suit by N. B. Bettison and another, legal heirs of deceased, against the Free Church of the Annunciation and others, to annul a portion of the will. From the judgment, plaintiffs and defendants Theresa Anderson and another appeal. Reversed in part and affirmed in part.

Wm. A. Dixon, of New Orleans (P. H. Mentz, of New Orleans, of counsel), for appellants Bettison and Reed. Carleton Hunt and M. D. Dimitry, both of New Orleans, for appellant dative testamentary executor. Frederick Adolph, J. Blanc Monroe, H. Generes Dufour, and George Janvier, all of New Orleans, for appellee Free Church of the Annunciation.

O'NIELL, J. An uncle and an aunt, being the legal heirs, of the late Miss Mary Percival, are sued to annul the following dispositions in her will, viz.:

"To the Free Church of the Annunciation, situated at the corner of Camp and Race streets, New Orleans, La., I leave my building, corner of St. Charles street and Gravier street, now occupied by the Western Union Telegraph Company. The income only from this property can be used for the benefit and improvement of said church. If it be sold, the amount obtained from the sale must be invested and the income from said investment only must be used. The capital must never be touched.

"The Free Church of the Annunciation must appoint a committee from its vestry, to arrange to pay to my faithful maid, Theresa Anderson, fifty dollars ($50.00) a month for the remainder of her life, the money to be taken from the rent of the building on St. Charles and Gravier streets, or from whatever income represents this rental. They must know that she is well cared for and in happy surroundings. They must pay her doctors' bills, and at her death, her funeral expenses. She must be buried in my tomb in

Metairie Cemetery. They are also to see that said tomb is kept in order for the rest of time. Committees from the vestry of the Free Church of the Annunciation must be appointed to attend to this. * * *

"Before the Free Church of the Annunciation can benefit by the income of the real estate left to them, they must pay from the accumulation of this income, twelve thousand dollars ($12,-000) to Mr. John Westly Chambers, 1715 Corcoran street, Washington, D. C."

The plaintiffs or contestants aver that the testatrix has not given nor attempted to give the above-described property to the church, but has attempted to give only the income or revenues of the property to the church, and thus establish a tenure of property unknown to the law of this state. They aver that the other clauses and conditions in the foregoing excerpt from the will are obnoxious to the spirit and policy of our law and jurisprudence, and are violative of and prohibited by the provisions of our Civil Code, in that they aim to create fidei commissa and a prohibited substitution and to establish a perpetual trust.

The plaintiffs prayed for judgment against the Free Church of the Annunciation, Theresa Anderson, John Westly Chambers, and the dative testamentary executor of the will, declaring the instrument null in so far as it relates to or attempts to dispose of or affect the property above described, or the income thereof, and decreeing the plaintiffs to be the owners of the property and its income or revenues.

The Free Church of the Annunciation answered in the name and under the title of "The Rector, Wardens, and Vestrymen of the Church of the Annunciation in the Parish of Orleans, in Communion with the Protestant Episcopal Church of the United States of America," alleging that the testamentary disposition is valid and confers upon this respondent the absolute ownership of the property.

Theresa Anderson and John Westly Chambers, in separate answers, assert that the stipulations in favor of both of them are valid testamentary dispositions; and the testamentary executor filed a separate, but similar, answer.

Judgment was rendered against the plaintiffs rejecting their demands, and recognizing the Free Church of the Annunciation to be the owner of the property and all of its revenues from the date of the death of the testatrix. The bequest in favor of the church was decreed valid, but the stipulations and bequests in favor of Theresa Anderson and John Westly Chambers were annulled.

The plaintiffs and Theresa Anderson and John Westly Chambers have appealed.

[1] There is an admission in the record, signed by all parties to this suit, that the Free Church of the Annunciation is a perpetual corporation created and existing under the name and title of "The Rector, Wardens, and Vestrymen of the Church of the Annunciation," etc., by and under the laws of this state, and that the corporation is organized for, and devoted to, religious and charitable uses and purposes. It is also admitted that the property above described is appraised in the inventory at $150,000, and is yielding, and will yield for the next five years, a net rental of $5,000 a year.

The plaintiffs concede that donations made for pious uses and purposes are highly favored by our law; but their counsel contend that this bequest to the Free Church of the Annunciation is not, in a legal sense, a bequest for a pious use, because there is no legatee to whom the title to the property is given, as a trustee, and there are no indefinite beneficiaries; in other words, their contention is that, to constitute a bequest for pious uses, the testator must bequeath the legacy to a trustee, in whom the law vests the title, for the benefit of a class of persons

designated by the testator by the class only, but composed of indefinite individuals. Hence it is argued that the Free Church of the Annunciation cannot be the legatee in this case because the church is authorized to use the income or revenues for its own "benefit and improvement"; and, in a bequest for pious uses the legatee, who is only a trustee, has no right to use the legacy for his own benefit.

Our interpretation of the bequest.is that the property was given to the corporation called by the testatrix the Free Church of the Annunciation, incorporated under the name and title of "The Rector, Wardens, and Vestrymen of the Church of the Annunciation in the Parish of Orleans," etc., and that the bequest was made for the pious and charitable uses and purposes for which this religious institution exists; that is, for the dissemination and maintenance of the doctrines of a Christian religion. The stipulation that "the income only from this property can be used for the benefit and improvement of said church" was addressed to the authorities of the church, and was in furtherance of the pious use and purpose for which the donation was made. The beneficiaries of such a donation are the indefinite persons composing the congregation and the community.

[2].By Act No. 124 of 1882 donations or bequests of any kind or description of property to trustees for educational, charitable, or literary purposes, or for the benefit of such institutions, are declared lawful. The statute declares:

"That the donor shall have the right to prescribe the manner in which the property donated shall be administered, and the objects to which it or any part thereof, or the revenues thereof, shall be applied: Provided, however, that property donated cannot be made inalienable, but the donor thereof, shall have the right to prescribe in what manner, and under what circumstances, the trustees shall be empowered to sell the same, or any portion thereof, or to change any investment once made."

It does not follow from the proviso "that the property donated cannot be made inalienable" that an attempt to make it inalienable shall annul the donation. In all other respects the testatrix, in this case, exercised her authority and rights under the statute with remarkable accuracy. The following sentences, taken together, do not mean that only the revenues of the property are given to the church, but are directions to the legatee to spend only the income from the property or from the proceeds of the sale of it, viz.:

"The income only from this property can be used for the benefit of said church. If it be sold, the amount obtained from the sale must be invested and the income from said investment only must be used. The capital must never be touched."

The last section of the statute of 1882 declares that the provisions of the Civil Code, or other laws of this state relating to substitutions and fidei commissa shall not apply to, nor in any manner affect, donations made for educational, charitable, or literary purposes or to such institutions.

The fact that the legatee is a religious corporation, and, as such, is a charitable institution, brings this case within the provisions of the statute of 1882.

For the reasons given in our opinion in the Succession of John Reilly, 136 La. 366, 67 South. 34, we cannot regard the decision in the Succession of Kernan, 52 La. Ann. 48, 26 South. 749, as a precedent or as authority for declaring the bequest in this case invalid.

[3] And, under the definition given in the numerous decisions reviewed and authorities cited in the Succession of John Reilly, it is plain that the stipulations in this will in favor of Theresa Anderson and John Westly

Chambers, and with regard to the tomb of the testatrix, do not create a substitution. They contain none of the elements of a prohibited substitution. It is not stipulated that the title of the property shall be tied up during the lifetime of one person to be transmitted or to revert to another at the death of the donee.

If there is a fidei commissum in these stipulations in favor of Theresa Anderson and John Westly Chambers, that does not affect the validity of the bequest to the Church of the Annunciation. If these stipulations are not legal, they are to be reputed not written; but they do not annul the bequest to the church.

[4] The issues presented by the pleadings, however, did not call for a decision on the rights and obligations of the defendants among themselves when the judgment was rendered against the plaintiffs rejecting their demands. There is no contest between the church and the other defendants. On the contrary, the Rector, Wardens, and Vestrymen of the Church of the Annunciation persist in their assertion that every stipulation in this testament is legal and binding upon them, and will be carried out according to the wishes expressed by their benefactress. These stipulations are at least moral obligations and the plaintiffs have no interest in preventing their fulfillment, since they do not affect the validity of the will.

The issues presented do not call for an expression of opinion, and we express none, as to the rights of Theresa Anderson and John Westly Chambers, or the obligations of the Church of the Annunciation to them.

The judgment appealed from is reversed in so far as it annulled the bequests to Theresa Anderson and John Westly Chambers, and in all other respects it is affirmed, at the cost of the plaintiff appellants.

MONROE, C. J., takes no part.