Succession of Mrs. Honoria Burke.

No. 12,887.

Succession of Mrs. Honoria Burke, Widow of William B. Ringrose.

## Syllabus.

(1) A clause in a will by which the testatrix, after making a number of legacies, declared : "After these bequests have been made, the remainder of my estate I desire my executors to use for any charitable institution they may select or think of benefiting to perpetuate my memory," does not fall under the provisions of Act 124 of 1882, and has, as to its validity, to be tested by the general rules of the Civil Code touching testamentary dispositions. So tested it cannot stand.

(2) The testatrix did not designate who should be her residuary legatee, but intended that the *residuum* of her estate should remain in her "Succession" until her executors should select some existing charitable institution (not one to be formed) who on such choice being made, would become her residuary legatee, entitled to demand at once the whole of the *residuum*, and thereafter to administer in right of ownership, not trusteeship. The testatrix did not intend to confer upon the executors a continuing power of administration of the *residuum*, either before or after they should have made a choice of the object of the testatrix's bounty, but intended that they should make a selection, and on making the same their power should be exhausted. The power and duty of selection was personal to the three particular persons appointed as executors, and could not be delegated by them to others, nor exercised by others to be substituted in their place. There would be no legal means of forcing the executors to make the selection in the event they should be unwilling to make a choice or unable to agree upon one. The bequest was not broad enough to cause it to be classed as a bequest for general charitable purposes ,and at the same time it was not specific enough to make it to be made to apply to any particular person or corporation.

ON APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Geo. W. Flynn* for Petitioners, Legal Heirs and Appellees.

*Rice & Montgomery* for Executors, Appellants.

Argued and submitted February 10, 1899.
Opinion handed down February 20, 1899.
Rehearing refused (Reasons assigned), March 7, 1899.
Opinion on rehearing by Watkins, J.

The opinion of the court was delivered by

NICHOLLS, C. J. Mrs. Honoria Burke, widow of William B. Ring-rose, died in the city of New York, on the 19th of October, 1897, leaving a last will and testament in olographic form, which was probated. in the Civil District Court for the parish of Orleans, in which parish the deceased had her domicile. Robert L. Strong, John H. Conniff and M. D. Lagan were appointed as her testamentary executors, with full seizin. The testatrix, after making a number of bequests, closed her will with the following clause: "Now, after these bequests have· been made, the remainder of my estate I desire my executors to use for any charitable institution they may select or think of benefiting to perpetuate my memory."

On November 15th, 1897, Thomas Henry Burke, William J. Cline, Jennie Cline, wife of Eli Barnet, and Patrick Calkin united in a petition in which they declared that they, together with the children. of Margaret Cavanaugh and William Martin and her sister, Mrs. Mary Martin, were nearest of kin and the sole surviving and living heirs at law of the deceased.

That the said clause of her will was absolutely null and void,· uncertain, vague, and meaningless, as well as in direct and positive violation of the prohibitory provisions contained in Articles 1519, 1520 and 1521 of the Revised Civil Code, which articles expressly prohibit substitutions and *fidei commissa*. That said clause should·be reputed not written; that if allowed to stand it would not be carrying out the last wishes of the deceased, but instead, would be substituting the will and judgment of the executors, all of which was contrary to good morals and the provisions of the Civil Code governing last wills and testaments.

That after payment and distribution of all the legacies provided for, and particularly set forth in said last will, the residue of the property left by the deceased belonged to them as the nearest of kin and` heirs at law of said deceased, and they were entitled to the same in the proportions fixed by law. In view of the premises they prayed that the said clause delegating to the executors the disposal of the residue, be declared to be absolutely null, void and of no effect, as well as in positive, express violation of the provisions of the Revised Civil Code prohibiting substitutions and *fidei commissa,* and that said last will be ordered executed as if said clause were not written therein;· that they be adjudged and decreed to be the sole living and only heirs

at law, and as such, entitled to inherit in the proportions fixed by law the residue of the estate of the deceased and to the exclusion of all others; that after the payment of the legacies named in the will, they, as such heirs, be put in possession of the estate of their said deceased relative.

On January 4th, 1898, the same parties, joined by William Martin and his sister, Mary Martin, wife of John Thornton, filed a supplemental petition, in which they reiterated the allegations and prayer of the original petition, and set forth certain parties as being with themselves legal heirs of Mrs. Honoria Burke. They alleged that the will of the deceased, if not void on the grounds of vagueness and indefiniteness, was null and void, as being in direct violation of the prohibitory provisions of Articles 1519, 1520 and 1521 of the Civil Code, and especially upon the ground that the said clause failed to make any distribution of the residue of the estate of the deceased.

Service of this petition was accepted by the executors on December 31st, 1897.

On January 10th, 1897, on motion of G. W. Flynn, attorney of the petitioners, suggesting that he had withdrawn as counsel for Miss Louisiana Cline, Mrs. Eli A. Barnett, W. J. Cline, William Martin and Mrs. Mary Thornton, it was ordered that the suit for the annulment of the claim of the will bequeathing the residue so far as the same applied to above named parties, be discontinued, leaving the petition to stand in the name of Thomas H. Burke and Patrick Calkin.

On January 12th, 1898, the executors answered, pleading, first, the general issue. They specially denied that petitioners were the heirs at law of the deceased, and that, as such, would be entitled to the residue of the estate of Mrs. Honoria Burke, even if said will was null and void, as alleged, but they denied that said will was null and void as alleged, or for any of the reasons alleged.

On May 23rd, 1898, Mark Calkin, John Burke, Mrs. Honoria Burke, widow of Patrick Dooley, Margaret Burke, wife of John F. Begley, Mrs. Mary Burke, wife of P. J. Costello, intervened in the suit, alleging themselves to be legal heirs of Mrs. Honoria Burke. They prayed to be so decreed, and that the last clause of her will be decreed null and void on the same grounds which had been set up by the original parties, and that they be decreed to be entitled to the residue of her estate in the proportion fixed by law.

The executors answered this petition under pleadings identical with . those in the original answer.

The District Court rendered judgment against the executors in favor of Thomas H. Burke, Patrick Calkin, Mark Calkin, Mrs. Mary Burke, widow of P. J. Costello, Mrs. Honoria Burke, widow of Patrick Dooley, Mrs. Margaret Burke, wife of John F. Begley, and John Burke, decreeing null and void and of no effect, and reputed as not written, the concluding clause of the last will and testament of Mrs. Honoria Burke, and recognizing and decreeing the said parties in favor of whom judgment was rendered to be the nearest of kin and the sole living representatives of the deceased, entitled to inherit the residue of the estate of the deceased in the proportions fixed by law to the exclusion of all other relatives.

The executors appealed.

### OPINION.

The executors maintain in this court that the will of the deceased is valid, independently of the provisions of the Act No. 124 of 1882, but that it is saved by the provisions of that act, if otherwise, it would be open to successful attack. The act in question makes it lawful for any one to make a donation *inter vivos* or *mortis causa* of any description of property and to any amount to trustees for educational, charitable, or literary institutions, whether already existing at the time of the donation, or thereafter to be founded. It provides that the donor of said property shall have the right to prescribe the number of trustees, the causes for which any trustee should cease to be such, the manner in which vacancies, however happening, should be filled, and the manner and formalities, according to which the trustees should meet and transact business. It provides that the donor shall have the right to prescribe the manner in which the property donated shall be administered and the objects to which it or any part thereof or the revenues thereof should be applied, provided that the property donated could not be made inalienable, but the donor thereof shall have the right to provide in what manner and under what circumstances the trustees should be empowered to sell the same, or any portion thereof, or to change any investment once made. It provides that the trustees named in the act of donation and their successors and substitutes, or such of them as are willing and may accept the trust, shall, upon complying with the laws of the State relative to the organization of

corporations for literary, scientific, religious and charitable purposes, constitute a body corporate, with the power of continuous succession and unlimited duration, and with all the powers conferred upon corporations by said laws, or by custom, provided, however, that the requirement of said laws as to the number of persons necessary for the formation of a corporation shall not apply to such trustees, and provided further that if any of the trustees will not or cannot accept the trust, then such of those named as are willing, may accept, and in the manner prescribed in the act of donation, proceed to fill the vacancies up to the required number. It provides further, that whenever there is an entire failure of the trustees to accept, then the Governor of the State may name a number of persons equal to the number named by the donor and who shall fill the places of and be vested with all the powers conferred upon the trustees by said donor. It further provides that said Board of Trustees shall administer the property entrusted to them in conformity with the directions contained in the act of donation and should have all the powers needed in such administration, but cannot mortgage, nor encumber the donated property except as might be prescribed in the act of donation, and that the trustees shall be entitled to no remuneration for their services, unless expressly granted in the act of donation.

It provides that the Board of Trustees shall have the power to accept and administer other donations *mortis causa* or *inter vivos* from the same and other donors, and to apply the same as might be prescribed in the subsequent act of donation. The administration of such subsequent act of donations to be governed by the directions contained in the subsequent act of donations.

It provides that the provisions contained in the Revised Civil Code or other laws of this State relative to substitutions *fidei commissa* or trust depositions shall not be deemed to apply to or in any manner affect donations made for the purposes and in the manner provided by the act, and that all laws or parts of laws conflicting with the provisions of this act are repealed in so far as regards the purposes of the act, but not otherwise.

The District Court was of opinion that the act of 1882 was not applicable to this case. That the testatrix did not make a donation to trustees for a charitable association to be by them administered as a body corporate in accordance with her directions; that the donation was made to executors whose duties were defined by law, and who,

while performing such duties, were officers of court.   That in no sense
were they trustees as named in the act, or in the will of the deceased.
That they had no property to administer as a body corporate for a
charitable association.   That the only mandate or direction which
they received from the will of the testatrix was to deliver the re-
mainder of her estate to an unknown third person, a charitable asso-
ciation whom they might select.

Referring to the terms of the will, the court said: "The plain
·common sense interpretation of the·clause in question and of the in-
tention of the testatrix, is that she bequeaths the remainder of her
·estate to her executors, with an order or mandate to them to give it to
any charitable institution they might select or think of benefiting.   It
is clear that the testatrix did not bequeath her estate to any charitable
institution by name, in any city, State or country, nor did she give it
·to trustees named by her, or to the trustees of any known charitable
institution, or one to be founded.   The testatrix bequeathed her pro-
perty to her executors to be by them held until they selected any
charitable institution, then to deliver it to such institution so selected.
The will is not valid because of uncertainty.   The test to be applied
is, could any court or any charitable institution compel the execution,
or execute the mandate of the testatrix, if the executors chosen by her
refused to select or refused to think of benefiting any charitable in-
stitution, or one or all of them were to die before they made the selec-
tion?   No court could compel the executors, on its own motion, to
execute the trust, and no charitable organization has any interest to
invoke the process of the court, and if any one of the executors, with
the uncertainty of life hanging over all, should die before the three
should agree, the mandate could never be executed.   The bequest is
uncertain and indefinite.

If the will is to be considered made to any charitable institution
by the testatrix and is not invalid by reason of uncertainty, it is still
invalid, because the choice of the charitable institution was left to
three executors, third persons.   Our law prohibits ·'the custom of
willing by testament by the intervention of a commissary or attorney
in fact,' and declares that the institution of heir and all other testa-
mentary dispositions committed to the choice of a third person are
null, even should that choice have been limited to a certain number
of persons designated by the testator.   (Civil Code, Article 1573;
Fink vs. Fink, 12th Ann. 301.)"

Holding that the clause of the will of the deceased did not fall under the provisions of Act No. 124 of 1882, the District Court proceeded to test its validity by the application to it of the general rules of the Civil Code, and having done so, reached the conclusion that under such a test it was not valid. It was of the opinion that it was violative of the prohibitory provisions of the code touching substitutions and *fidei commissa;* that it was void for uncertainty and void for having left the selection of the beneficiary of the testatrix's bounty to a third person, in violation of Article 1573 of the Civil Code.

While the executors repudiate the idea that by the bequest in question they have had cast upon them either the ownership of or an interest in the residue of Mrs. Burke's succession, and deny that the attack made upon it on the ground that it is violative of the provisions of the Civil Code, prohibiting substitutions and *fidei commissa,* is well founded, we are not certain that we understand with precision the construction which they place upon the will and upon their rights and duties under it.

We understand them to contend that the disputed clause of the will is, in reality, a bequest for charitable purposes; that while it does not directly order that a corporation should be founded to carry out the wishes of the testator and it does not appoint them as trustees thereof, or trustees at all by name, yet it is the evident intent that they should be trustees, and they are authorized under the Act of 1882 to have themselves organized into a corporation and administer the property left; that while they were not directed and would not be authorized under such administration to deal directly with the ascertainment of individual cases calling for charitable assistance and go themselves to their immediate relief, yet they were charged with a continuing power and duty to turn portions of the fund in their hands over from time to time, to different charitable institutions, which they would select, to be by the latter applied to charitable purposes, and that the persons to be so relieved by them were intended to be and were the objects of the bounty of the testatrix; that they would not be authorized or warranted under the will in selecting some particular charitable institution and turning over to it at once all the residue of the succession in their hands, and on obtaining a receipt therefor, be discharged on the strength of such receipt, from all further responsibility under their trust; that were they to attempt to do so, legal remedies would be at hand to undo such action and to cause a proper

and legal execution of the wishes of the testatrix; that as under a bequest so written as to be unquestionably a bequest for charitable uses, uncertainty as to the particular individuals who, under it would obtain relief, would not militate against the validity of the bequest, nor would the power and duty of making the selection of such persons do so; so in the present case, the uncertainty as to what particular persons would be ultimately benefited by the will of the testatrix and the selection of the particular institution which should be charged with the duty of directly ascertaining and selecting proper objects for charitable relief, and actually distributing the funds, would not detract from the legality of the clause attacked.

Under this construction (if we correctly apprehend it) a double administration would be needed before the poor and needy could or would be reached; first, an administration by the executors, and next, an administration by the governing boards of the different charitable institutions selected by the executors.

An examination of the will shows that the declared object of the bequest was "to perpetuate the memory of the deceased," but in a direction indicated by her; that she did not direct the creation of any corporation to carry out her wishes, nor refer to her executors at all as trustees; that she did not make any allusion at all to individuals requiring assistance. That they would only be reached and afforded aid consequentially as the result of funds furnished by the executors to some charitable institution which would undertake itself to dispense it to particular individuals and not by virtue of direct bequest to the parties themselves. We do not understand the will to have cast upon the executors the ownership of the residue of her estate or any interest in it with the ownership to shift afterwards to some other person by the force of the bequest. We understand her intention to have been to leave the residue of her estate in her "succession" until the executors should have made choice of some particular existing charitable institution (not one to be thereafter formed), which institution upon such choice being made, would become her residuary legatee and entitled to demand at once possession of and control over the whole fund.

We do not think the testatrix intended that her executors, either acting individually or as a corporation, should have a continuing power of administration of this *residuum* after their selection of a legatee.

35

We think, on the contrary, the testatrix intended to charge her executors with the single specific duty of making the selection of a residuary legatee, and that upon the performance of this precise duty their power over the whole matter would be exhausted. We are of the opinion that the disposition and control of this fund by this selected institution, after it would be placed in its hands, would be in virtue of ownership, not trusteeship.

The testatrix did not make a legacy of the *residuum* of her estate to persons needing and entitled to receive charity, although, as said by this court in City vs. Hardie, 43rd, Ann. 255, (in commenting upon a bequest of Colin J. Nicholson), "they were surely to be benefited by it" if carried out. The bequest was to some existing charitable institution, which was to be selected by the executors.

We do not think the bequest in question falls under the provisions of Act No. 124 of 1882. Its validity or invalidity has to be tested by the application to it of the general rules of our law touching testamentary dispositions. So tested we do not think it can stand. The bequest is so specific as to withdraw it from being classed as a bequest for general charitable uses and at the same time so general as not to permit it to be made to apply to any particular person or corporation as the legatee of the deceased. The testatrix did not designate any one as her residuary legatee, but left the selection of the legatee to the choice of her executors. This she could not validly do.

The right and duty of making this choice was evidently personal to the three particular persons named. Not only could this not be delegated by them to others nor exercised by parties to be substituted in their place should they refuse to perform the duty, but there would be no legal means of forcing them into making a selection in the event they were unwilling to do so, or were unable to agree upon a choice.

We are of the opinion that the deceased died without leaving a residuary legatee, and that the *residuum* of her succession passed at her death to her legal heirs. (C. C. 886, 1709). We understand the executors to concede that the parties in whose favor the District Court rendered judgment are, in fact, legal heirs of the deceased, and will not, therefore deal with that question; but it is evident from the pleadings that there are other legal heirs who are not before the court. Who and how many they are we do not know, nor do we know the proportion in the succession the different heirs would be entitled to re-

ceive. In view of that fact, we think that portion of the judgment which recognized the parties to be the only legal heirs of the deceased, to the exclusion of all others, and which fixed the proportion which those parties were to receive in the succession should be, and the same is hereby set aside, leaving the rights of the heirs to be hereafter settled and determined, and that as so altered and amended the judgment of the District Court be, and the same is hereby affirmed. Costs of both courts to be borne by the succession.

## ON APPLICATION FOR REHEARING.

WATKINS, J. This is a controversy respecting the validity of one clause in the last will and testament of the deceased which is expressed in the following words, viz.:

"Now, after these bequests have been made, the remainder of my estate I desire my executors to use for any charitable institution they may select or think of benefiting, to perpetuate my memory."

It was contested upon the ground (1), that it was merely a *direction* to the executors named in the will to *use* the remainder of the estate for some unknown and indefinite object or person; (2), that same was not a bequest within the meaning of the law under which the executors could claim title to the property; (3), that it was meaningless, and in direct contravention of the prohibitory provisions of the law, and must be reputed not written

After a careful examination and study of the will, and making an application thereto of the authorities, we were unanimously of the opinion that the aforesaid disposition was illegal and void, and that the deceased died without leaving any residuary legatee, and that, consequently, the *residuum* of her succession passed, at her death, to her legal heirs.

It is now contended that the aforesaid disposition bequeathed the remainder of her estate "*to her executors*, with an order or mandate to them to *give* to any charitable institution they may select, within the meaning of Act 124 of 1882; and that such a disposition should receive a liberal interpretation because it was a legacy destined to pious uses, and can be executed."

State of Louisiana, State of Maryland intervening, vs. Executors of McDonogh & City of New Orleans, 8th Ann. 216.

But, the difficulty is, that the will does not designate any charitable

institution as donee, but leaves that selection to the executors named.

Under its terms, they are given the power to act, or to refuse to act altogether.   Under this view, a perfectly unavoidable one, there is no donee named at all in whom a title could or did vest; and the irresistable conclusion is, that the said disposition is null, and that the *residuum* must go to the legal heirs of the deceased.

Rehearing refused.