136 So.2d 471 (1962)
Succession of Mrs. Delphlne L. ABRAHAM.
Bessie Hardee Feazel et al. Opponents and Appellants.
No. 400.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1962.
*473 John Makar, Natchitoches, for opposition appellants.
Watson, Williams & Brittain, by Arthur C. Watson, Natchitoches, Gravel, Sheffield & Fuhrer, by James S. Gravel, Alexandria, for Bishop of Alexandria, appellee.
Before FRUGE, CULPEPPER and HOOD, JJ.
HOOD, Judge.
This is an action instituted by appellants opposing the final account filed by the testamentary executors of the estate of Mrs. Delphine L. Abraham, deceased. Judgment was rendered by the trial court dismissing the opposition and approving and homologating the final account filed by the executors. The opponents have appealed from that judgment.

On Motion to Dismiss Appeal
Appellees have filed a motion to dismiss the appeal on the ground that appellants failed to pay timely the fees required by law for filing the appeal and the costs of preparing the transcript, and that they failed to file timely a sufficient appeal bond.
The judgment of the district court was signed on November 17, 1960. A motion for rehearing was denied on December 18, 1960, and on that same day appellants moved for and were granted a devolutive appeal, the return date of that appeal being set for February 7, 1961. Thereafter, on motions of the Chief Deputy Clerk of the trial court, three separate orders were signed by the trial judge, on February 3, April 3 and May 31, 1961, each extending the return date of the appeal for successive 60 day periods, the last such order extending the return date until July 31, 1961.
A devolutive appeal bond in the full amount fixed by the court was filed by Bessie Hardee Feazel, one of the appellants, on February 3, 1961, which was prior to the original return date and within 90 days after the motion for rehearing was denied. On motion of appellees, however, the appellant who furnished this bond was ruled into court to show cause why the bond should not be decreed to be insufficient, and this *474 rule was made absolute on March 21, the judgment to that effect being signed two days later. On March 22, 1961, a good and sufficient devolutive appeal bond was filed by all of the appellants. The fee required by law for taking an appeal and the costs of preparing the transcript were not paid to the Clerk of Court, however, until July 14, 1961. The transcript was then lodged in this court on July 19, 1961.
Appellees contend that the orders of the trial court extending the return date on three separate occasions are invalid because they were not granted for "sufficient cause." It is argued that the clerk requested the extensions simply to give the appellants more time within which to pay the appeal costs, and that this does not constitute sufficient cause for the granting of that type of relief. There is nothing in the record to show that this was the sole reason why the Clerk requested the extensions. The last two motions for extension filed by the Chief Deputy Clerk simply recite that "he has been unable to complete the transcript," and no reason is assigned for requesting the first extension.
Article 2125 of the LSA-Code of Civil Procedure provides that the return date may be extended by the trial court "for sufficient cause," on the application of the Clerk, or of the deputy clerk preparing the record of appeal. Since the record does not show that the return date was extended without sufficient cause or that the trial judge abused his discretion in granting these extensions, we conclude that the return date was properly extended from time to time and that the transcript was timely lodged in this court prior to the extended return date.
Appellees further contend that the appeal should be dismissed, at least as to all of the appellants except Mrs. Feazel, because an appeal bond was not filed within 90 days of the court's refusal to grant a timely application for a new trial, as required by LSA-C.C.P. Article 2087. The first appeal bond supplied by Mrs. Feazel (which was later decreed to be invalid) was filed within the 90-day period, but the second bond which was furnished by all of the appellants the day after the first bond was held to be insufficient was filed after that 90-day period had elapsed.
Article 5124 of the LSA-Revised Code of Civil Procedure provides that within four days of the rendition of judgment holding the original bond insufficient or invalid, the party furnishing it may correct any defects therein by furnishing a new bond, and that:
"The new or supplemental bond is retroactive to the date the original bond was furnished, and maintains in effect the order, judgment, writ, mandate, or process conditioned on the furnishing of security."
The jurisprudence of this State has been established to the effect that only one appeal bond is required for multiple appellants from a single judgment. Vienne v. Chalona, 203 La. 450, 14 So.2d 54; Hernandez v. Ethyl Corporation, La.App. 1 Cir., 83 So.2d 150 (Cert. denied), and cases cited therein. Since an adequate appeal bond was timely filed by one of the appellants in this case, we conclude that insofar as the requirements for furnishing an appeal bond are concerned, the appeal was timely perfected for all of the appellants.
For the reasons herein assigned, therefore, the motion of appellees to dismiss the appeal is denied.

On The Merits
Mrs. Delphine L. Abraham, a resident of Natchitoches Parish, Louisiana, died on June 9, 1958, leaving a last will and testament, in olographic form, in which she named S. J. Gormanous and Reverend Francis H. Roth as testamentary executors. The will is somewhat lengthy, consisting of ten pages and containing a number of bequests. Some parts of the will are not couched in legal phraseology, and it appears that the *475 testatrix did not have the assistance of an attorney in preparing it. No question is raised in this suit, however, as to the form of the will or as to the capacity of the testatrix to execute it. Shortly after Mrs. Abraham's death the will was admitted to probate, and the two persons named as executors were appointed and were confirmed as such. Inventories of the property belonging to the estate were then made and were homologated and filed in the record. The record indicates that the testatrix left no forced heirs.
On February 10, 1960, the testamentary executors filed an account, designated by them as a "final account," setting out the deposits and disbursements which they had made in behalf of the estate, and their proposed disbursements and their proposal for the distribution of the remaining assets. In this account the executors propose to pay and to transfer to His Excellency Charles P. Greco, Bishop of Alexandria, "all remaining assets belonging to this Succession," after the payment of debts and special legacies.
The appellants, alleging that they are collateral relatives and heirs of the decedent, timely filed a petition, opposing the homologation of the final account of the executors. As grounds for opposing the account appellants allege that proper notices of the filing of the account were not given, that the disbursement of certain funds prior to the filing of such an account was improper, that some of the proposed disbursements should not be allowed, and that a number of particular legacies and a purported universal legacy are invalid, null and void. Appellants pray that certain disbursements already made by the executors be returned to the succession, and that they be recognized as heirs of the testatrix and put in possession of the residuum of her estate. One of the items in the account which they especially oppose is the proposal that all of the remaining assets belonging to this estate be paid or transferred to Bishop Greco as the residual or universal legatee of the testatrix.
In response to this opposition, the testamentary executors filed an exception of non-joinder of parties plaintiff and an exception of no right and no cause of action. Similar exceptions were filed by Bishop Greco. The exceptions of no right and no cause of action are based on the argument that under the provisions of the will Bishop Greco has been made the residual, or universal, legatee of the testatrix, that accordingly he is the only one who will benefit or will lose by the payment or non-payment of claims or particular legacies, and that since appellants have no interest in the estate they have no right or cause of action to oppose the payment of any items or bequests as set out in the final account of the executors.
The provision of the will upon which appellees rely in contending that Bishop Greco is the residual, or universal, legatee of the testatrix reads as follows:
"the balance of my property what ever nature and kind what herein bequested I will bequeath unto the Most Revieard Charles P. Greco Bishop of Alexandria Louisiana or to his Successors in office should he predsede in death only to be used to build a Catholic School or an Ophinage on the home place at Monett Ferry Louisiana for benefit for unprivelege Children."
The trial judge concluded that Bishop Greco is a universal legatee under the provisions of the will, and that the stipulation, "only to be used to build a Catholic School or an Ophinage on the home place at Monett Ferry Louisiana for benefit for unprivelege Children," is merely a precatory suggestion addressed to the conscience of the legatee and is not binding in law. It is apparent from the reasons assigned for judgment that the trial judge based that conclusion on the cases of Girven v. Miller, 219 La. 252, 52 So. 2d 843; and Succession of Hall, 141 La. 860, 75 So. 802. Accordingly, judgment was rendered by the district court maintaining the exceptions of no right and no cause of action filed by the executors and Bishop Greco, and dismissing the opposition filed *476 by appellants. Judgment further was rendered approving and homologating the account filed by the executors, and ordering the disbursement of the funds and assets of the estate in accordance with that account. It is from this judgment that opponents have appealed.
We cannot agree with the argument advanced by counsel for one of the appellees that the conditions attached to the bequest in the residual clause in the will were intended to apply to only the "successors in office" of Bishop Greco, and that the testatrix did not intend for them to apply to the Bishop in the event he survived her and became the residuary legatee. On the contrary, we think the testatrix clearly intended for those conditions to apply to that legacy, whether Bishop Greco or one of his successors became the legatee.
We agree with the position taken by appellees that a "residuary" legatee is a "universal" legatee, in the sense that that term is used in the Revised Civil Code. Where there are no forced heirs and there is a residuary legatee, therefore, any particular legacies which are struck down or are annulled for any reason would fall into the residuum and would go to the residuary legatee. In such a case the collateral heirs who are neither particular nor universal legatees have no interest in the estate. LSA-C.C. Art. 1606; Succession of Burnside, 35 La.Ann. 708; Succession of Kneipp, 172 La. 411, 134 So. 376; Succession of Maus, 177 La. 822, 149 So. 466; and Succession of Peters, 192 La. 744, 189 So. 122.
In Succession of Herber, 117 La. 239, 41 So. 559, a collateral relative of the decedent attacked both the particular legacies and the residual legacy. The Supreme Court, in holding that plaintiff's petition failed to state a cause of action, said:
"If the dispositions in favor of the universal legatee be valid, the plaintiff has no interest to attack, and discloses no cause of action in attacking the particular dispositions of the will, since, in that event, if they be annulled, the property intended to be disposed of by them would fall into the residuum. Succession of Burnside, 35 La. Ann. 708. It will therefore simplify matters to inquire whether, if all that the plaintiff has alleged be true, the court would be obliged to hold that the universal legacy is of no effect.
* * * * * *
"We conclude, therefore, that, as the petition alleges no cause of nullity in the universal legacy, and, as the plaintiff has no interest in particular legacies, which if annulled, fall into the residuum, the plea of no cause of action was properly sustained."
In our opinion the principle applied in the Herber case also is applicable where there is a universal legatee and a collateral heir attacks the proposed payment of claims against the estate as well as the payment of the particular legacies.
In the instant case, the first important question presented is whether Bishop Greco is a residual or universal legatee under the will. If he is, then opponents have no interest in the estate and have no cause of action to attack the alleged improper payment of claims or particular legacies. If that portion of the will which purports to make him the residuary legatee is void, however, and there is no other residuary legatee, then opponents do have the right to attack the alleged improper payment of claims or particular legacies and their petition would state a cause of action.
The law provides that in the interpretation of wills, "the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament," and that "a disposition must be understood in the sense in which it can have effect, rather than that in which it can have none." LSA-C.C. Articles 1712 and 1713.
*477 In Succession of Rougon, 223 La. 103, 65 So.2d 104, the Supreme Court set out the following principle which should be applied in the interpretation of wills:
"It is fundamental that in the interpretation of a last will the intention of the testator is all important and controlling and the ascertainment of it must be undertaken, without departing, however, from the proper signification of the terms of the testament. LSA-Civil Code, Article 1712. If the will, or a bequest therein, is susceptible of both a legal and illegal construction, because the intention is not clearly expressed, that which is favorable to its validity is to be preferred. LSA-Civil Code, Article 1713; Swart v. Lane, 160 La. 217, 106 So. 833. Where the words, are plain and unequivocal, on the other hand, a forced interpretation should not be adopted. Succession of Vatter, 192 La. 657,188 So. 782; Succession of Stallings, 197 La. 449, 1 So.2d 690."
Appellants contend primarily that the provision in the will which purports to make Bishop Greco the residuary legatee is void because it is inconsistent with other bequests contained in the will. These conflicting provisions, they contend, create "impossible conditions," which cannot be reconciled, and accordingly under the provisions of LSA-C.C. Article 1519 they must be "reputed not written." Article 1519 of the Civil Code provides that:
"Art. 1519. In all dispositions inter vivos and mortis causa impossible conditions, those which are contrary to the laws or to morals, are reputed not written."
Appellants point out that beginning on page one of the will testator bequeathed to Rosa Jones "for her life only the use of my Residence and all the Contents there of and the out buildings and three acres of land on which the buildings stand," until her death or until other events occurred. On page five of the will the following additional bequest is made:
"I will and bequeath to Most Rev. Charles P. Greco Bishop of the Roman Catholic Dioces of Alexandria Louisiana trustee, or to his successors in office should he Predecease me, My Home place on which I now reside containing 110 acres, Situated at Monett Ferry Louisiana. This bequeath is made for the use benefit and advantage of the Church to be builed at Monett Ferry Louisiana the income only From said property is to be used in the Charitable and Pious work of the said Churchchanging conditions in the future may warrant the Sale of the property in that event the amount obtained there by must be invested and the income only from the Investment shall be used for the Church."
Under the above-quoted provisions of the will, it appears that the testatrix made a special bequest to Bishop Greco, as trustee, of her homeplace containing 110 acres for the use and benefit of the church to be built at Monette Ferry. She also bequeathed the usufruct of three acres out of the same homeplace to Rosa Jones. Further, in the residual clause of the will she charged that Bishop Greco was to use the residuum of her estate only to build a Catholic school or an orphanage on her homeplace. Appellants contend that these are inconsistent bequests, none of which can be fulfilled without violating the others. Accordingly, it is argued that under LSA-C.C. Article 1519 all of such bequests must be "reputed not written."
We think the testatrix clearly intended for title of the 110-acre homeplace to become vested in Bishop Greco, as trustee, except that three acres of that property is to be subject to the usufruct bequeathed to Rosa Jones. We do not interpret the particular legacy of the homeplace to be for the benefit of a church which is to be built only on that particular piece of property, because the will merely refers to a church to be built at Monette Ferry, Louisiana. It is immaterial to the validity of these legacies relating to the homeplace, *478 however, whether the testatrix intended for a church to be built on the homeplace or not, because we assume that a church as well as a school and an orphanage could be built on a tract of land that size. The requirement in the particular legacy to Bishop Greco, as trustee, that the income from the homeplace is to be used for "Charitable and Pious work" of the church, and that the income from the investment of the proceeds of the sale of such property is to be used only "for church," is not inconsistent with the residual clause in the will, which requires the Bishop to use the residuum of her estate to build a Catholic school or an orphanage on the homeplace. Considering the requirements of Articles 1712 and 1713 of the LSA-Civil Code, therefore, we conclude that the provisions of the will relating to the 100-acre homeplace are not so conflicting or irreconcilable that they constitute "impossible conditions," which render those portions of the will invalid.
Appellants further contend that the residual clause in the will, purporting to make Bishop Greco the residuary or universal legatee of the testatrix, is void because it attempts to create a "condition of inalienability," or a tenure of property which is not recognized under our laws. As we understand the argument of counsel for appellants, it is contended that by this residual clause the testatrix has attempted to create a "substitution" or a "fidei commissum," both of which are forbidden by Article 1520 of the LSA-Civil Code. This article of the Code reads as follows:
"Art. 1520. Substitutions and fidei commissa are and remain prohibited.
"Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.
"In consequence of this article the trebellianic portion of the civil law, that is to say, the portion of the property of the testator, which the instituted heir had a right to detain, when he was charged with a fidei commissa or fiduciary bequest is no longer a part of our law."
The essential elements of a substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. If permitted, the effect of a substitution would be to tie up the title and keep it out of commerce during the lifetime of the first donee, during which time neither he nor the person designated to receive the title at the donee's death could alienate it. The essential elements of a fidei commissum are that the donee or legatee is invested with the title and charged or directed to convey it to another person or to make a particular disposition of it. In the fidei commissum the title to the property is not tied up or kept out of commerce. Breaux v. Breaux, 218 La. 795, 51 So.2d 73; Succession of Reilly, 136 La. 347, 67 So. 27; Succession of Johnson, 223 La. 1058, 67 So.2d 591; Succession of Meunier, 52 La.Ann. 79, 26 So. 776, 48 L.R.A. 77.
The jurisprudence of this State has been settled to the effect that a disposition which constitutes a substitution is null and void, even with regard to the original donee or legatee. A disposition which constitutes only a fidei commissum, however, does not annul the entire disposition, but the language used which imposes the condition is regarded only as a precatory suggestion, addressed to the conscience of the donee or legatee, which being illegal can have no binding effect and may be legally regarded as not written. Succession of Reilly, supra; Succession of Johnson, supra; Succession of Hall, supra; Girven v. Miller, supra; Succession of Maguire, 228 La. 1096, 85 So.2d 4.
It should be pointed out here, although it will be discussed more fully later in this *479 opinion, that the laws of this State relating to substitutions and fidei commissa do not apply to or in any manner affect donations made to a trustee for the benefit of educational, charitable or literary institutions. Const.1921, Art. IV, Sec. 16, LSA; LSA-R.S. 9:2279.
In this case it seems obvious to us that the bequest of "the balance of" the testatrix's property to Bishop Greco, as shown on page six of the will, does not constitute a substitution, because the donee is not prohibited from alienating the property, and there is no provision in the will to the effect that any part of the property bequeathed is to be transmitted to a third person at the death of the original donee.
Counsel for appellees argue that the conditions imposed in this universal legacy constitute a fidei commissum, which is prohibited by law, and accordingly that the trial court was correct in regarding those conditions as not written. Counsel for appellants, on the other hand, contend that even though the residual clause in the will should be construed as constituting a fidei commissum, rather than a substitution or an inalienable title, nevertheless the conditions imposed on the donation cannot be disregarded because they form an integral part of the bequest. It is argued that the universal legatee, if there is one, is "a Catholic church or orphanage on the home place at Monett's Ferry, Louisiana, for the benefit of underprivileged children," and not Bishop Greco. As authority for this argument we have been referred to the cases of Female Orphan Society v. Young Men's Christian Association, 119 La. 278, 44 So. 15; Succession of Kernan, 52 La. Ann. 48, 26 So. 749; and Succession of Burke, 51 La.Ann. 538, 25 So. 387.
In Female Orphan Society v. Young Men's Christian Ass'n, supra, Julian Poydras donated some real property to plaintiff, an incorporated charitable institution, with a condition attached to the donation that it should never be alienated. Defendant subsequently agreed to buy the property, but upon discovering this condition in plaintiff's title refused to complete the sale, and plaintiff thereupon instituted suit for specific performance. The court rendered judgment in favor of plaintiff, ordering specific performance of the contract. In its opinion the Court held that the provision in the act of donation that the property could never be alienated was contrary to public policy and illegal, and accordingly under LSA-C.C. Article 1519 that portion of the donation must be considered as not written. That case has no application here, however, because in this suit there is nothing in the will which prohibits Bishop Greco from alienating any part of the property which was bequeathed to him. On the contrary, we think the testatrix intended for him to have the right to alienate the residuum of her estate, because that is the only way in which most of it could be used to build a school or an orphanage. Also, we fail to see how the Female Orphan Society case can be of any comfort or assistance to appellants here, because in that case the donation was decreed to be valid, and only the conditions of inalienability attached to it were reputed not written.
In Succession of Kernan, supra, the testator bequeathed certain property to Archbishop Janssens, of the diocese of Louisiana, and to his successors "in fee and forever." The Supreme Court held that the entire bequest was void because it purported to convey title only after certain conditions had been met and it would have the effect of making the property "forever inalienable." The Kernan case also is not applicable here, because in the instant suit, as has already been pointed out, the bequest to Bishop Greco does not purport to create an inalienable title. We note that the Supreme Court in later cases criticized the ruling in Succession of Kernan, supra, and indicated that the donation involved there may have been valid as a charitable trust, under Act 124 of 1882. Succession of Reilly, 136 La. 347, 67 So. 27; Succession of Percival, 137 La. 203, 68 So. 409. In Succession *480 of Reilly, supra, for instance, the Court had the following to say with reference to the Kernan case:
"In the opinion, pronouncing the bequest invalid, no reference at all is made to the Act 124 of 1882, which had been passed eight years before the decision was rendered; and the statute seems so applicable to the case that we are constrained to believe it was overlooked by the court. * * *."
In Succession of Burke, supra, the testatrix, after making a number of legacies, declared: "After these bequests have been made, the remainder of my estate I desire for my executors to use for any charitable institution they may select, or think of benefiting, to perpetuate my memory." The Supreme Court held that this disposition was void because no donee was named in the will, there was no one who could be vested with title as owner or as trustee, and that the disposition could not be classified as a charitable trust under Act 124 of 1882. That case also is not applicable here, because in the will now being considered the legatee is named and in our opinion the disposition can and should be classified as a charitable trust.
We think the testatrix in this case clearly intended to bequeath the remainder of her property to Bishop Greco, as trustee, to be used by him only for the purpose of building a Catholic school or an orphanage on her homeplace at Monette Ferry, Louisiana, for the benefit of underprivileged children. The residual clause in her will, therefore, creates a trust for the benefit of educational, charitable or literary institutions, as specifically authorized by LSA-R.S. 9:2271 et seq. The portions of this chapter of the Revised Statutes which we think are pertinent read as follows:
"Any person may make a donation inter vivos or mortis causa to a trustee or trustees either for the benefit of educational, charitable, or literary institutions existing at the time of the donation or thereafter to be founded or for educational, charitable, or literary purposes generally without designating the particular purpose to be fostered. Accordingly, the donor may designate the particular use to be made of the donation or he may permit the trustee or trustees to designate, create, or change, from time to time and as often as they may deem wise, the beneficiary of the trust estate or of any part thereof. The donor may impose in the act of donation any conditions he may desire which are not contrary to law." (LSA-R.S. 9:2271)
"The laws relative to substitutions, fidei commissa, or trust dispositions, shall not apply to or in any manner affect donations made for the purposes and in the manner provided by this Part, and all laws or parts of laws conflicting with the provisions of this Part are repealed insofar as regards the purposes of this Part, but not otherwise." (LSA-R.S. 9:2279)
Under these provisions of the Revised Statutes, the disposition is valid in spite of the fact that the testatrix's beneficiary, that is a school or an orphanage for underprivileged children, was not in existence at the time of the creation of the trust, or that the means of carrying out the purpose for which the property is to be used is left to some extent to the discretion of the trustee, the bishop. Also, under the provisions of LSA-R.S. 9:2279, the fact that the clause may create a fidei commissum does not render the bequest invalid. See also Constitution of 1921, Article IV, Sec. 16.
In Succession of Marion, 163 La. 734, 112 So. 667, the testatrix left the remainder of her estate to a legatee to hold in trust for the Catholic Women's Club, a charitable corporation dedicated to aiding women in necessitous circumstances, to establish a memorial to her and her brother's name. *481 The Supreme Court found that the residual legacy in that case created a fidei commissum, but the court did not regard those conditions as "not written." Instead, the intent of the testatrix was considered and it was held that the bequest established a charitable trust under the provisions of Act 72 of 1918, which contained provisions almost identical to those in LSA-R.S. 9:-2271 et seq. Also, the Court held that the fact that the trustee had discretion as to what was a suitable memorial made no difference, since it was clear that some work of charity consistent with the purposes for which the Catholic Women's Club was founded was the type of memorial contemplated by the testatrix.
We realize that in the Marion case the testatrix used the words "in trust," while the testatrix in the instant suit did not use those words in the residual legacy to Bishop Greco. In our opinion, however, this difference in the facts is immaterial. We do not think it is essential for the testatrix to use the word "trust" in order to create a charitable trust under LSA-R.S. 9:2271 et seq. If the will clearly shows that the testatrix intended to create such a trust, and the manner of creating it and the purposes for which it is set up are in compliance with the laws on that subject, then we think the will must be interpreted so that the intent of the testatrix is carried out. Also, the fact that a Catholic School or an orphanage for underprivileged children were not in existence at Monette Ferry at the time of the testatrix's death does not render the bequest invalid, because LSA-R.S. 9:2271 specifically provides that such a donation may validly be made for the benefit of educational, charitable or literary institutions "existing at the time of the donation or thereafter to be founded."
In Succession of Maguire, 228 La. 1096, 85 So.2d 4, the testatrix bequeathed the residue of her estate in trust to the pastors of two Catholic churches "for the use and benefit of young girls as a Loan Fund to be lent to them in order to enable them to fit themselves to earn a living." The will gave unlimited discretion to the trustees in the selection of beneficiaries and in the administration of the fund. The will further provided that the trustees should pay to the testatrix's cousin an amount every month out of the trust fund. The presumptive heir instituted suit to have the legacy annulled on the grounds that it contravened Article 4, Section 16, of the Constitution of 1921, which provides that "No law shall be passed authorizing the creation of substitutions, fidei commissas or trust estates; * * * and provided further that this prohibition as to trust estates or fidei commissas shall not apply to donations strictly for educational, charitable, religious purposes * * *." The Supreme Court held that that portion of the bequest which required the trustee to pay monthly sums to the testatrix's cousin was considered as not written, but that the remaining portion of the donation was valid as constituting an educational or charitable trust.
In Succession of Percival, supra, the Supreme Court held that the following clause in a will constituted a charitable trust under Act 124 of 1882:
"To the Free Church of the Annunciation, situated at the corner of Camp and Race streets, New Orleans, La., I leave my building, corner of St. Charles street and Gravier street, now occupied by the Western Union Telegraph Company. The income only from this property can be used for the benefit and improvement of said church. If it be sold, the amount obtained from the sale must be invested and the income from said investment only must be used. The capital must never be touched.'"
A study of the will convinces us that Mrs. Abraham did not intend to benefit Bishop Greco personally, and that the conditions attached to the residual clause in the will were not mere precatory suggestions. Instead, we think she intended to create a trust for the building of the school or orphanage described in that portion of *482 the will, and she bequeathed the residue of her property to Bishop Greco, as trustee, for that purpose.
We note that on pages three and four of her will the testatrix made three special bequests to Bishop Greco, "as trustee." On page four she made a special bequest to Reverend Francis H. Roth, also "as trustee." On page five another special bequest of the testatrix's homeplace was made to Bishop Greco (that particular bequest having been quoted above in this opinion), and following his name there appears the word "trustee." In making these special bequests to Bishop Greco and to Reverend Roth, where she used the word "trustee," the purposes for which the property or funds donated were to be used were stated in the will substantially in the same manner as the purposes were stated in the residual clause.
The record shows that in November, 1959, the executors petitioned the court to fix the State inheritance taxes, and in that petition it was alleged "that the universal legatee of the estate is the most Reverend Charles P. Greco, Bishop of the Roman Catholic Diocese of Alexandria, or his successors in office. This portion of the estate is therefore exempt from any inheritance taxes." LSA-R.S. 47:2402(4), relating to exemptions from inheritance taxes, provide such an exemption for "all legacies and donations to charitable, religious or educational institutions located within the State of Louisiana." We think the position taken by the executors in connection with the fixing of inheritance taxes is inconsistent with the position which they now take that the property was donated to the Bishop personally, with no restrictions as to its use for educational or charitable purposes.
These pleadings and other provisions in the will, we think, support our conclusion that the testatrix intended to create a charitable trust in bequeathing the balance of her property to Bishop Greco "only to be used" for the charitable purposes therein specified. It may be argued that since she used the word, "trustee," in some instances, and did not use it in the residual clause of the will, it should be inferred that she did not intend to create a trust in the lastmentioned bequest. As has already been pointed out, however, the testatrix did not use legal phraseology in many parts of the will, and we think her failure to use the word "trustee" in the residual clause does not indicate any intent on her part that the balance of her estate was to go to Bishop Greco personally, without any restrictions as to its use.
In Girven v. Miller, 219 La. 252, 52 So.2d 843, and Succession of Hall, 141 La. 860, 75 So. 802, both of which are relied on by appellants, the conditions attached to the bequests were considered by the Supreme Court as being merely precatory suggestions, and as such were not legally binding on the donee and were reputed not written. In each of those cases, however, the real beneficiary was an individual and the bequest could not be classified as a charitable trust. The residual clause in the instant case clearly establishes a charitable trust, as authorized by LSA-R.S. 9:2271 et seq., and therefore the conditions attached to the conation are not "contrary to the laws," and should not be "reputed not written" under LSA-C.C. Article 1519.
We are convinced that since the residual clause in the will is valid and constitutes Bishop Greco as the residuary or universal legatee, as trustee, appellants have no right to contest the payment of claims or particular legacies unless the purposes for which the trust is created cannot be carried out or for some other reason the trust fails. Counsel for appellants in his written brief argues that:
"* * * If the Church has no intention of carrying out the bequest through its Bishop, then it should be denied this bequest or refuse to accept it with the conditions imposed. Since there had already been an intimation that the bequest would not or could not be carried out, why should not opponents *483 be given an opportunity by a trial on the merits to establish this fact?"
We agree with counsel that appellants should be given an opportunity to establish that the purposes for which the trust was created cannot be carried out, or that it will not be accepted, or that the trust must fail for some other reason. We have been unable to find any allegations to that effect in the opposition which they filed to the account, however, the only allegation which relates to that issue being that no Catholic school or orphanage on the homeplace is "presently contemplated." We do not think that allegation is sufficient to state a cause of action, because although no such school or orphanage may be presently contemplated it is possible and reasonable to assume that an institution of the type described in the legacy will be contemplated and established after the trust has been accepted. The petition filed by opponents, in its present form, therefore, does not state a cause of action. We think, however, that the right should be reserved to appellants to assert any claims which they may have in the event the residual legacy is not accepted or for any other reason the trust fails.
We recognize the sincerity of all the parties to this action, and are aware of their desire to comply with the wishes of the testatrix. We also are conscious of the difficulties which might be presented if circumstances change in the future so that it becomes impossible or impractical to carry out the purposes for which the trust has been created. In that connection, however, we think it is appropriate to mention that under the provisions of Act 592 of 1954 (LSA-R.S. 9:2331 et seq.) the doctrine of "Cy Pres" has been specifically incorporated into the laws of this State as being applicable to charitable trusts. Under that statute, where the circumstances have so changed since the creation of a trust as to render it impractical or impossible to comply literally with the terms thereof, adequate proceedings are prescribed whereby the court may decree that the donation may be administered in such a manner as to accomplish as nearly as possible under the then existing circumstances, the general purposes of the bequest or donation. See also Succession of Vance, 39 La.Ann. 371, 2 So. 54; In re Milne's Succession, 230 La. 729, 89 So.2d 281; Vol. XV Louisiana Law Review 9, 28-31; Bogart's Handbook on the Law of Trusts (3rd Ed. 1952) Sec. 147, pages 566-568.
In the case of In re Milne's Succession, supra, where our Supreme Court specifically recognized the "Cy Pres" doctrine, the Court said:
"Our research leads us to the conclusion that the doctrine of cy pres as applied in the United States is the doctrine of approximation. 10 Am.Jur., Charities, sec. 123, p. 676. The doctrine of approximation is a Civil Law doctrine which has been long recognized in Louisiana. * * *.
* * * * * *
"* * * If Milne's primary intent to provide for the relief of orphan boys cannot be carried out in the manner designated by him, it may be carried out in some other manner, under the doctrine of equitable approximation or under the cy pres doctrine, but his primary intent can never be disregarded."
In decreeing the residual legacy in this case to be a charitable trust, it is not our purpose to limit or restrict any rights which the trustee, the heirs, the court or anyone else may have under the cy pres doctrine.
In our opinion the judgment of the trial court should be affirmed insofar as it sustained the exceptions of no cause of action filed by appellees, but that it should be amended to decree that the residual legacy to Bishop Greco creates a charitable trust, and that the right is reserved to appellants to assert any claim which they may have, as presumptive heirs *484 of the testatrix, in the event the residuary legacy is not accepted or for any other reason the trust fails. We think such a disposition of the case is proper, in view of the provisions of Article 2164 of the LSA-Code of Civil Procedure, which authorizes the appellate court to render any judgment which is just, legal, and proper upon the record on appeal.
For the reasons herein assigned, therefore, the judgment of the trial court is amended and recast to read as follows:
It is ORDERED, ADJUDGED and DECREED that the exceptions of no right or cause of action filed in this matter by Reverend Francis H. Roth and S. J. Gormanous, Executors, and by His Excellency Charles P. Greco, Bishop of Alexandria, be sustained, and accordingly that the opposition filed by Bessie Hardee Feazel, et al., to the Final Account of the Executors be and the said opposition is hereby dismissed.
It is further ORDERED, ADJUDGED and DECREED that the Final Account filed in this matter by the Reverend Francis H. Roth and S. J. Gormanous, as Executors of the Succession of Mrs. Delphine L. Abraham, be approved and homologated, and that the funds and assets of this succession be distributed in acordance with said account, except that the remaining assets belonging to this succession, after payment of all claims and particular legacies as set out in the account, are to be paid, transferred and delivered to His Excellency Charles P. Greco, Bishop of Alexandria, as trustee, only to be used to build a Catholic School or an orphanage on the homeplace at Monette Ferry, Louisiana, for the benefit of underprivileged children. Nothing in this decree, however, shall be construed as limiting or restricting any of the rights, powers or authority granted by LSA-R.S. 9:2331-2337, relating to the doctrine of cy pres.
It is further ORDERED, ADJUDGED and DECREED that there is hereby reserved to appellants, Bessie Hardee Feazel, et al., the right to assert any claim which they may have in the event the charitable trust created by the will is not accepted or fails for any other reason.
All costs incurred in the District Court in connection with this opposition will be paid out of the mass of the estate. The costs of this appeal are assessed to appellants.
Amended and affirmed.