YARRUT, Judge.
Plaintiffs seek the revocation of a testamentary Trust created by the last will and testament of the deceased; for the closing of the Memorial Home created thereunder because the Trustees are not performing the conditions set forth by deceased; and that all remaining assets of the Trust be turned over to them as the only surviving collateral heirs of the deceased.
The Trustees filed exceptions and an answer denying the demand of the heirs. The case was submitted on the merits on a stipulation of facts, to-wit:
1. That the Plaintiffs are the closest surviving collateral heirs of the deceased;
2. That during the year 1915 the said Board of Trustees completed the erection of a brick structure located within the City of New Orleans, which was named “The John M. Bonner Memorial Home;” that it contained accommodating facilities, including nineteen dormitory rooms, for suitable caring for twenty-two aged and infirm men; and in keeping with its trust and in conformity with the intentions of the donor, the first constituted Board of Trustees provided that in order to be eligible for admission to the Home, applicants should be men of gentle birth, age not less than fifty years, free from chronic and contagious disease, never inmates of public institutions and physically able to take care of themselves;
3. The Board of Trustees have often sought assistance from the New Orleans Department of Welfare and churches in order to contact eligible applicants for the Home without success;
4. That the economic factor involved is the necessity of maintaining the Home with a proper staff and necessary physical repairs at modern inflated prices on lessening income, resulting in substantial net losses every year since 1958; the largest being a loss of $12,601.00 for the year 1964. As of December 31, 1964, the book value of the assets in the Trust Fund was $106,337.00 according to the Home’s Audit Report. Assuming that the 1964 loss will be repeated in subsequent years and that it will all have to be taken out of capital, the Plome can survive for at least eight years;
5. As a result of the instant litigation, the Trustees of the Home, at the suggestion of Miss Lillie H. Nairne, a trained Social Worker, former Director of the Orleans Parish Department of Public Welfare, requested the Social Welfare Planning Council to undertake a study of the Home. As a result, a special committee appointed by the Council recommended, inter alia, that the Trustees (1) eliminate the requirement that the men admitted to the Bonner Home be indigent, of gentle birth, and never have been inmates of a public institution; (2) consider the merger of the Bonner Home with another organization which cares for aged and infirm men;
6. That Miss Lillie H. Nairne, if called as a witness in these proceedings by Defendants, would testify that:
“She had read the report rendered by the Social Welfare Planning Council of June, 1963 and although it was very well done, she did not necessarily agree with every aspect of the report;
*257 “That there is presently a trend to move away from large group institutional care and housing into the smaller, more closely knit, boarding or foster home arrangement;
“That the foster home group care plan involved the boarding of from four through nine persons in individual homes or houses and she feels that the Bonner Home, which can accommodate presently up to eight persons, is certainly satisfactory for such an arrangement ; and,
“That there was definitely a need in this community, despite major recent economic, social and political changes, for a small group home similar to Bonner for the care of aged men who do not have a family with whom they can live and who are not physically disabled but who do need assistance in their routine care, feeding, etc.”
7. In 19S6, the Trustees closed one wing of the Home and no repairs have since been made thereto, though it is presently in need of repair but its further need is not anticipated. The remaining portion of the Home is in constant use and is not in need of any immediate structural repairs. There are presently accommodations for eight (8) residents at the Home, and these eight (8) accommodations do properly meet the minimum living standards and needs of elderly men and in particular those of the present five (5) residents of the Home; and,
8. That photographs of the exterior and interior of the Home may be submitted by counsel for either litigant to assist the court in determining the physical condition of the Home at the present time; without the necessity of calling the photographer to identify them.
The deceased died in 190S leaving a last will and testament creating the Trust Fund, reading as follows:
“I will and bequeath all the rest and residue of the proceeds of said real estate so to be sold, to Alexander J. Dwyer, Alfred LeBlanc, Joseph W. Carroll, William B. Sommerville, Joseph P. Blair, Benjamin Moss, all of New Orleans, Louisiana, as trustees in trust to found and maintain in New Orleans a Home for aged and infirm men to be called the John M. Bonner Memorial Home, and I request said trustees to form themselves into a body corporate under the laws of the State of Louisiana, to carry this trust into effect. I desire said corporation to be formed pursuant to the provisions of Act 124 of the acts of the Legislature of Louisiana of the year 1882, and I desire that vacancies in the Board of Trustees be filled by election by the remaining trustees.”
Plaintiff’s main contentions for the dissolution of the Trust and for the turning over of all remaining assets of the Trust to them are:
(a) Inability to secure a sufficient number of aged men possessing the required eligibility requirements;
(b) The facilities and accommodations as provided are outmoded and inadequate for the proper care of elderly men;
(c) Such elderly persons can be better cared for in nursing homes and institutions which are available;
(d) Because of insufficient income, repairs and alterations needed in order to provide better care for the inmates have not been made; and
(e) A limited income, only about one-third of operating expenses, is causing heavy withdrawals from invested capital which is increasingly approaching exhaustion.
It is apparent from the stipulations submitted that the primary purpose of the Trust is being fulfilled. While only five men are presently living in the Home in its present condition, it can accommodate eight.
*258 The primary intent of the testatrix in establishing the Trust must first be ascertained in order to determine if it has been fulfilled. In re Milne’s Succession, 230 La. 229, 89 So.2d 281, 1956, held:
“ * * * If Milne’s primary intent to provide for the relief of orphan boys canfiot be carried out in the manner designated by him, it may be carried out in some other manner, under the doctrine of equitable approximation or under the cy pres doctrine, but his primary intent can never be disregarded.”
89 So.2d at 288.
LSA-C.C. art. 1713 provides:
“A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.”
In Girven v. Miller, 219 La. 252, 52 So.2d 843, the court held:
“In interpretation of acts of last will we are bound, under Article 1712 of the Civil Code, to ascertain the intention of the testator ‘without departing, however, from the proper signification of the terms of the testament’ and it is our duty, under Article 1713, to construe the disposition in the sense so that it will be given effect, if possible. * * * ” 52 So.2d at 845.
(1) Even though only five men are being maintained by the Home at the present time, and substantial repairs should be made to the Home, the heirs have a right only to submit an alternate plan as to how the general purpose of the Trust can be better accomplished.
(2) Plaintiffs contend that LSA-R.S. 9:2331-37, Part IV verbo “Cy Pres” under the subject “Charitable, Etc., Trusts,” is unconstitutional because it is an ex post facto statute destroying their vested rights as heirs of the deceased. This contention is untenable because:
(1) The statute is not ex post facto because it merely establishes a procedure to follow in pursuit of the existing cy pres or approximation doctrine already existing in Louisiana as clearly stated in In re Milne’s Succession, cited supra.
(2) Plaintiffs have no vested rights because they are not forced heirs and they were completely ignored in the decedent’s testament.
The Cy Pres statute was interpreted in In re Succession of Abraham, 136 So.2d 471 (La.App.1962) to the effect that, where the circumstances have so changed since the creation of a Trust as to render it impractical or impossible to comply literally with the terms thereof, the court may decree that,the donation be administered in such a manner as to accomplish, as nearly as possible under the then existing circumstances, the general purposes of the bequest or donation.
We fully agree with the district court that the Trustees are reasonably carrying out the purpose of the Trust, as the Home is still in existence, in reasonable condition as shown by the photographs, and funds are available to take care of elderly men at this time, even though the number now cared for is only five. On the other hand, if the heirs should prevail, the Home would no longer exist to care for aged men however few, nor as a memorial to John M. Bonner, but would be promptly and permanently closed, and the remaining assets of the Trust, though only sufficient to maintain it for a few more years, would escheat to the collateral heirs which the testatrix never intended.
The judgment of the district court is correct and is affirmed; Plaintiffs to pay costs in both courts.
Judgment affirmed.