Succession of Vance.

## No. 9817.

## SUCCESSION OF ELIZA VANCE.

### ON PETITION OF CITY OF NEW ORLEANS.

Bequests for pious uses are highly favored by law.

An unincorporated institution, organized, administered and maintained by a municipal corporation, and known as "*The Insane Asylum*," may be the object of a charitable bequest.

A legacy to such an establishment is intended for the relief of the indigent insane of the city, and vests, at the testator's death, in the municipal corporation for the use and benefit of the unfortunate cared for by it.

An unconditional legacy, once vested, cannot be divested. After it has passed, it cannot revert.

The municipal corporation may subsequently discontinue such institution as a *locus*. It may confine and keep such persons in another local and special institution.

By such discontinuance the legacy does not lapse and revert.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*W. H. Rogers*, City Attorney, for the City of New Orleans, Appellant.

*Leovy & Leovy*, *E. B. Kruttschnitt* and *J. P. Blair*, for the Executor and other Defendants, Appellees.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is a suit by the city of New Orleans for the recovery of a legacy made for the benefit of the indigent insane in her charge.

The defense is, that there is no such bequest in the will; that, while there was a gift to a certain named institution, "*The Insane Asylum*," yet, before acceptance, or demand for the legacy, this institution passed out of existence, leaving no representative; that, having voluntarily abolished the asylum, the city has deprived herself of the only character in which she had any right to receive the legacy, and has rendered impossible the performance of the conditions attached thereto.

From a judgment dismissing her petition, the city prosecutes this appeal.

From the admissions of counsel, the following are the important facts from which the controversy arises:

Mrs. Vance left a will, by which she bequeathed $300 to each of four charitable institutions, all of the city of New Orleans, one of which was "*the Insane Asylum*," and directed that any residue of her estate, after payment of the legacies, be divided, share and share alike, between five grandchildren and the four institutions alluded to.

At the date of Mrs. Vance's death, there was in the city of New

Orleans an institution known as the *Insane Asylum*, which was unincorporated and under municipal control.

Before the legacy was accepted by the asylum, that institution was discontinued and its inmates transferred to the State Insane Asylum, at Jackson, in this State.

Subsequently, relying on an ordinance of the city of New Orleans purporting to have transferred to the State Asylum all the rights of the city, as particular and residuary legatee, the State Asylum claimed the legacies.

It is also admitted that in such Insane Asylum were housed the indigent insane of New Orleans, and that after discontinuing caring for them in that place, the city has provided for their detention in the *Louisiana Retreat*, a special institution which receives persons afflicted with mental affections; and that the city pays for the same.

The legacy claimed exceeds $2000.

Other admissions were made, which it is unnecessary to particularize.

It forms part of the judicial history of this succession that the right urged by the State Asylum to the legacy in question was not recognized—the court holding that the fund bequeathed to the Insane Asylum of New Orleans could not be diverted by the city to another institution under the administration of a State Board.

Apprehending, after the decision was rendered, that the executor of Mrs. Vance would distribute the amount of the legacy among the grandchildren of the deceased and the three other institutions, as residuary legatees, the city sued out an injunction and claimed the legacy.

In order to arrive at a correct conclusion on the subject, the following questions must be considered:

1st. What was the intention of the testatrix?

2d. Has the legacy to the Insane Asylum passed at her death to that institution?

3d. If it has, can it be claimed to have reverted?

4th. Even if it could, has the event arisen upon which the return could take place?

I.

Our Code has long ago recognized and laid down the wise rules which prevail in all civilized countries and which have been steadily followed, as much as practicable, namely: that in the interpretation of wills the intention of the testator must be principally endeavored to be ascertained, and that a disposition must be understood in the sense in which it can have effect, rather than in that in which it can have none. R. C. C. 1712, 1713.

Guided by the light of these texts of law, as well as by numerous precedents and the views of commentators on similar provisions in other systems, we once endeavored to find and we then formulated what we conceived to be the intention of the testatrix, namely: when the interpretation of her will was first before us on the claim of the State Asylum.

We then said, after rejecting the pretensions of the State Asylum, as transferree:

"It may be that the legacy and the residuary bequest have not absolutely lapsed. The ordinance of the city council assigning them to the opponent is null; but it is not necessarily a renunciation of them. Whether the council can or will accept and administer the fund for the benefit of those for whom the testatrix intended it, is a matter not of present concern to us.

"If the indigent insane of the city are the sole recipients of it, there seems to be no satisfactory reason why the legacy and bequest shall not be maintained.

"The *locus* where these unfortunates are detained is not a material consideration.

"The object of the testatrix was to relieve their destitution and assuage the rigor of their lamentable condition. The city council is the administrator of the fund she has donated for that purpose."

We were then and we are now satisfied, that the intention of the testatrix was to cooperate in the relief of the indigent insane, for whom the city was bound to make provision.

In her mind, it must have been a matter of no significance whatever, whether those persons were attended to in this or that building, in this or that locality, by these or those municipal or other employees, or servants, or nurses. Her object was to relieve suffering humanity in that class of human beings, and to that charitable purpose she devoted part of her worldly goods.

## II.

The fact is patent that, at the death of Mrs. Vance, persons of that denomination were being taken care of by the city, and were housed in a particular place, specially set apart for their custody and maintenance, under municipal supervision.

It is admitted that this asylum was not incorporated and was under the city's control. Indeed, as it was not a corporation or independent being, it had to be so. It had in itself no life, no legal existence. It had, therefore, no inherent rights and could be subjected to no legal

obligation, but it could well be an object of charity; though it could neither accept or reject a gift.

Established, provided for and administered by the city, out of her own revenues, served by subordinates appointed and removable at pleasure by the city, that institution formed part of the municipal machinery, as much as the jail, the court house, and was nothing but a municipal or corporate functionary. In other words, it was the city herself.

While writing on public institutions, Laurent says:

" Quand le Code parle d'etablissements publics il place toujours en première ligne, les hospices. C'est une institution nécessaire, puisqu'il y aura toujours des misères humaines aux quelles il faut porter remède. Cependant personne ne dira qu'elle forme une personne naturelle.

" Les administrations municipalles nomment une commission qui dirige les divers établissements de charité et gère les biens qui leur sont affectés.

" C'est la société qui exerce la charité par l'intermédiaire des hospices." Vol. 1, No. 295, p. 378.

### III.

The executor puts himself out of court by the very attitude which he assumes when he charges that the legacy has returned to the succession, by reason of the discontinuance of the asylum. He thereby impliedly admits that the legacy has passed from the succession to the legatee, but insists that it has returned.

This cannot be under our system of law, which forbids giving and not giving. Had the testatrix thus stipulated, however, that condition, being prohibited, would have been illegal, and as such dealt with or reputed as not written.

If the legacy has passed, as it surely has, then the succession has been divested absolutely and the legatee has acquired.

An unconditional legatee cannot, after vesting, be divested under any contingency.

It is, therefore, clear that, although the insane asylum was not incorporated, the legacy could take effect, and that it has passed from the succession of the deceased to the city of New Orleans for the use and benefit of her indigent insane.

### IV.

If it be true, then, that the legacy, at the death of Mrs. Vance, passed and vested, and if it could be said that it was made contin-

gent on a condition sanctioned by law, could it be urged that it had *lapsed,* because of the discontinuance of the asylum?

It is perfectly true that legatees and heirs benefit by the *failure* of legacies which they were bound to discharge. R. C. C. 1704, 1709; but it is no less so that those legatees and heirs are thus benefited only where the legacy has been rejected and was made to one incapable of receiving it. R. C. C. 1703, 1709.

In the instant case, however, the insane asylum could be an object of charity, the legacy was not rejected, but accepted, and suit was brought to recover it; the testatrix has not expressed any contingency for the caducity of the legacy, and the municipal corporation which administered the institution is still in existence, ministering unto the necessities of her indigent insane.

The Supreme Court of this State has, in a remarkable litigation, well said that legacies of this class are known to the civil law from the formation of Christianity, as legacies for pious uses, and are an element in the polity of municipal administrations in all countries which have preserved the features and jurisprudence of Roman civilization. They are highly favored by law on account of their motives for sacred usages and their advantage to the public weal and the great consideration which the law attaches to these legacies controls tribunals in their interpretation of them, and has secured for their support a doctrine of approximation which is coeval with their existence. McDonogh's will case, 8 Ann. 246.

It is under the authority of the article which is now No. 1549 of the Revised Code, which declares that donations made for the benefit of a hospital, or the poor of a community, or of establishments of public utility, shall be accepted by the administrators of the same, that the Supreme Court has allowed a bequest to the orphans of a municipality to be recovered by the city of New Orleans. Succession of Mary, 2 R. 438. It is under the same authority that, in another celebrated controversy, the city was recognized the right to receive the residue of a large estate, which the testator had directed to be applied to the erection, maintenance and support of a suitable asylum in the city, to be used solely for Protestant widows and orphans, to be called *Fink's Asylum.* 12 Ann. 301. See, also, 8 Ann. 171; 17 La. 46; J. P. V. 1886, p. 967.

Withal, those propositions of law are admitted, but it is argued that the city has no right except as administrator of the asylum, and then only *sub modo,* under condition of applying the gift to the use and benefit of this particular institution. It is further urged that, as the

city has, by her voluntary act, abolished the asylum before acceptance of the legacy, she has thereby lost the character of administrator and rendered impossible the performance of the conditions attached to the gift, the city is without any title to the legacy she is seeking to recover.

We do not view the matter in that light.

As was well said by this Court, when it passed on the pretensions of the State Insane Asylum, under the transfer of rights attempted to be made, the *locus* where the indigent insane of the city are detained, is not a material consideration. The object of the testatrix was to relieve their destitution and mitigate their lamentable condition. The city council is the administrator of the fund which she donated for that purpose.

It is admitted that the city of New Orleans no longer does what she formerly has done and was doing when Mrs. Vance died, viz: confine and keep her indigent insane in a specially assigned building and place, but this circumstance does not militate adversely to her present claim.

The discontinuance may be justified for reasons which have not been proved, but which can be easily realized. She may have done so either because the building was too small, needed repairs or improvements of which she could not defray the expense, or because it was located in an improper spot, or because the inmates were not sufficiently well cared for, or because the depleted municipal treasury would not afford adequate means to relieve existing evils, or because she found it more advantageous, pecuniarily, morally and physically, to have her indigent insane committed and maintained in a special institution within her limits, easy to supervise, which receives a like class of unfortunates.

*Non constat* that the city will not some time resume the direct control over her indigent insane, which she exercised over them when Mrs. Vance died.

The fact is patent that since the city has discontinued keeping her insane in a building under the management of her subordinates, she has made arrangements with the Louisiana Retreat for the admission and care of her insane, and that this substitution, which has for its special object to take charge of such persons, receives and provides for them, for a money consideration which the city actually pays.

There exists no parity between this case and that of the succession of Nicholson, 37 Ann. 346. There this Court held that incorporated institutions claiming directly a charitable bequest must show that it

comes within the *terms* and *conditions* of the will. Here the question is not one of identity; it is simply one of existence or not, one which is practically: whether a municipal corporation has a right to claim a legacy made to an institution at a time under its direct management and which has been discontinued as a distinct organization after the death of the testator.

There is no dispute that if the Insane Asylum which was in being at that date, existed to-day in the same conditions, the city would have a right to recover.

But we have said that the place, mode or manner in which the insane of the city are maintained is insignificant, the intention or object of the testatrix being the relief of those persons of whom the city takes charge and for whom she provides.

We therefore conclude that the legacy made by the deceased for such relief having once vested, cannot be and has not been divested; and that consequently the city is entitled to recover it, the same to be used .exclusively in furtherance of the benevolence of the testatrix.

*Melius valeat quam pereat.*

It is therefore ordered and decreed, that the judgment appealed from be reversed, and it is now ordered and decreed that the city of New Orleans recover of the succession of Mrs. Eliza Vance the particular and residuary legacies, with legal interest from judicial demand, the sums bequeathed when received to be exclusively applied by the city for the relief of her indigent insane, in furtherance of the will of the testatrix.

It is further ordered and decreed that the injunction originally issued but subsequently dissolved, be reinstated and perpetuated, the succession to pay costs in both courts.