JOHN S. COVINGTON, Judge.
This proceeding to annul two bequests contained in Mr. Lulu C. Mizell’s probated statutory will was tried on December 7, 1982. In written reasons for judgment filed May 11, 1983 the Twenty-Second Judicial District Court, Parish of St. Tammany, Honorable Stephen A. Duczer, Judge Presiding, ruled the legacies to Sun Methodist Church were valid and on August 22, 1983 signed the judgment decreeing “the Sun United Methodist Church is entitled to an undivided one-half interest in the 300' x 300' plot described in paragraph three of the Last Will and Testament of Lulu C. Mizell” and “the bequest of $160,000.00 to the Sun United Methodist Church for the purpose of building a United Methodist Church and parsonage and all other provisions of the will are valid and enforceable.” Petitioner-opponent, Floyd Stanley Mizell, testator’s only child, devolutively appealed the judgment.
FACTS
Lulu C. Mizell executed two statutory testaments in 1978 before John N. Gallas-py, notary public. Only the second one, dated November 28, 1978, is the subject of this litigation. On May 24, 1979 the testator died; on August 16, 1979 his testament *1373 was probated; the order of probate confirmed testator’s widow, Alda Talley Mi-zell, as testamentary executrix; and on August 20, 1979 letters testamentary were issued to her.
Various pleadings were filed by Mrs. Mi-zell in her representative capacity, all relating to the managing the affairs of the succession, the most recent pleading, a petition for authority to sell a community owned automobile, having been prepared by counsel for appellant and filed on July 15, 1983. The most recent pleading prepared by John N. Gallaspy as attorney for the testamentary executrix was filed August 27, 1981 or six months after Floyd Stanley Mizell (Mizell) filed his petition to annul the legacies to the Sun Methodist Church.
On February 24, 1981 “Petition to Declare Nullity of Legacies” and the prayer recited that “Sun Methodist Church and the executrix of the Succession of Lulu Mizell be ordered to show cause on a date and time fixed by this Court ... why the legacies to the Sun Methodist Church should not be declared null”. The petition contained typewritten instructions to serve John N. Gallaspy, attorney for the succession and the testamentary executrix as late as October 12, 1981; a curator ad hoe was appointed for Sun Methodist Church (Church) and service of the petition and rule nisi were made upon him. The curator filed an answer in the form of a general denial on April 16, 1981. Retained counsel for Sun Methodist Church filed an answer on June 4, 1981. No answer or other responsive pleading was ever filed by the testamentary executrix. Both the testamentary executrix and Mr. Gallaspy were live witnesses at the trial of this matter on December 7, 1982. However, in the statement of appearances of counsel at trial, Mr. Gallaspy made no appearance as counsel for the succession or for the executrix and his sole participation at trial was as a fact witness. The record does not reflect that Mr. Gallaspy ever withdrew as counsel for the succession or for the executrix; it also does not show that anyone was enrolled as additional counsel for the succession or for the executrix.
At the outset of trial the district court determined that the proceedings were being conducted via ordinaria, a procedural requirement before C.C.P. art. 2931 was amended by Act 90 of 1984.
DISTRICT COURT RULING
The trial judge stated in his reasons for judgment that testator’s will “confers title to the Sun Methodist Church of a 300' x 300' plot of land, subject to payment by the Sun Methodist Church of ... $1,000.00 per acre to Mrs. Alta Talley Mizell for her interest therein”. The judge determined that the church tendered payment but Mrs. Mizell refused to accept it and reasoned that “by tendering payment, the church, to the extent possible, satisfied the condition necessary to confer the testator’s interest in and to the subject property to the legatee” and “the nonacceptance by Mrs. Mizell of tender of payment by the church does not nullify that section of the will, and the substance of the will remains intact”, thus the “unenforceable provision of the will does not so frustrate the intent of the testator such that the entire will should be annulled.” The court’s analysis of the bequests to the Sun Methodist Church, reasoned Judge Duczer, “makes it clear that [testator’s] primary purpose and intent was to build a Methodist Church” and “his secondary purpose was to have the church built on the designated site”, therefore, “if the testator’s primary purpose cannot be carried out in the manner designated by him, it may be carried out in some other appropriate manner such that the intent of the testator is not frustrated”. The trial judge declared the church and Mrs. Mizell owners in indivisión of the 300' x 300' parcel of land and “the bequest of $160,000.00 to the church for the purpose of building a Methodist Church and parsonage ... valid and enforceable”.
Counsel for both Mr. Mizell and the Sun Methodist Church submitted post-trial memoranda, designated as “Suggested Findings of Fact and Conclusions of Law”, which the court took into account in its reasons for judgment.
*1374 ASSIGNMENTS OF ERROR
Appellant characterizes as “Issues of the Case” “(1) The Trial Court did not consider the Will as a whole document in rendering the judgment; and (2) The Trial Court did not apply the uncontroverted testimony showing the intention of the Testator in rendering the judgment”. Properly speaking, these constitute appellant’s assignments of error.
ISSUES
The issues presented in this appeal are:
1. Is a conditional pious bequest invalidated if the condition of the bequest requires an affirmative act of a co-owner of the subject of the bequest and the co-owner’s refusal to do the act renders the condition impossible?
2. By holding the legatee of a conditional pious bequest and the testator’s uncooperative co-owner to be owners in indivisión is either the primary or secondary intention of the testator impermissibly thwarted?
3. If questions one and two are answered in the affirmative, is a bequest of money to build the church contemplated by the testator also invalidated?
BEQUEST OF COMMUNITY IMMOVABLES
Numbered paragraph three of the testament provides that “I will to the Sun Methodist Church a plot of land East of the Mizell Cemetery on the West side of the new Highway 21 as the site for the church and parsonage, a plot of land 300' X 300'. This bequest is subject to payment by the Sun Methodist Church of the amount of $1,000.00 per acre (this is approximately a two acre parcel) to Mrs. Alda Talley Mi-zell, for her part of this land. Buildings are to be set approximately 100' off the highway right of way, reasonably in line with each other and are to be built by contract or in part, whichever is cheaper. This building site will enable the buildings to be located on the new j-lane highway.” (Emphasis ours).
The second numbered paragraph of the testament stated, in part, that “the officers of the church are to accept this bequest by Resolution”. The bequest contained in the second paragraph is a sum of money “to the Sun Methodist Church, for the purpose, and sole purpose, of building a Methodist Church and parsonage in Sun, Louisiana”.
On October 28, 1979 a resolution was adopted by “the members of the Sun United Methodist Church” which “authorize[d] the Board of Trustees of the Sun United Methodist Church to accept the gift of Lulu C. Mizell as contained in his Last Will and Testament dated November 28, 1978”. In the same resolution the “Pastor, the Board of Trustees, and the Church Attorney” were “authorized to negotiate with the Executor and Attorney for the Estate of Lulu C. Mizell” subject to a stated restriction that “any final decision made by them which would result in a bequest less than provided in the last will and testament shall be approved by the Board of Trustees, the Pastor, and the District Superintendent”. (Church Exhibit # 4).
In January, 1980 the church attorney mailed a copy of the resolution and tendered payment of the required amount for Mrs. Mizell’s interest in the land to John N. Gallaspy in his capacity as attorney for the testamentary executrix. The tender was refused and the check was returned. Approximately thirteen months after payment for Mrs. Mizell’s interest in the land was tendered this proceeding to declare the legacies of land and money to the church was filed by testator’s only child.
The petition seeking nullification of the legacies alleged in part that testator’s surviving spouse in community “has not sold her interest in the above 300' X 300' parcel of land, and said bequest is impossible”. Plaintiff-appellant asserted the invalidity of the bequests of land and money by relying on three legal principles or doctrines. Plaintiff alleged the bequests of land and money were invalid because: (1) “undue influence was made by members of the Methodist Church and Sun Community”; (2) the “legacies constitute legacies to a minister of religious worship ... during the last illness of decedent”; and (3) the legacies delegate the authority of the testa *1375 tor to another person to choose the legatee under the will”.
The defense of undue influence or captation, not recognized in Louisiana jurisprudence, was not pursued at trial and that issue is not before this court. Likewise, the allegations of prohibited substitution and incapable legatee were not pursued at trial and are not before this court.
C.C. art. 1712 provides the basic principle to apply when interpreting testaments:
“In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.”
Our courts have stated the testator’s “intention must be ascertained from the whole will, and effect must be given to every part of the will as far as the law will permit. No part of a will should be rejected, except what the law makes it necessary to reject. Where it is a question of choice between two interpretations, one of which will effectuate, and the other will defeat, a testator’s intention, the court should select that interpretation which will carry out the intention of the testator.” Succession of LaBarre, 179 La. 45, 48 153 So. 15, 16 (1934); Carter v. Succession of Carter, 332 So.2d 439 (La.1976); Succession of Wagner, 431 So.2d 10 (La.App.4th Cir.1983).
Although plaintiff-appellant’s brief leaves much to be desired from the standpoint of clarity of thought, he argues that Mrs. Mizell’s failure to transfer to the Church her interest in the parcel of land bequeathed to the Church invalidates the bequest because the condition attached to the bequest is impossible to accomplish. Plaintiff-appellant contends that the testimony of the attorney who drafted the will and who was testator’s personal attorney “for years” establishes the testator “knew that the wife would have to consent to the transfer of the property to the Church, and that the bequest to the Church itself, would fall, if the Church could not be placed on that parcel of land”. (Emphasis ours).
Appellee, Church, argues that the proper interpretation of testator’s will is “that the primary purpose was to build a Methodist Church and his secondary purpose was to have the church built on the designated property”. In support of its contentions, the Church relies on C.C. art. 1519 and jurisprudence interpreting Article 1519.
C.C. arts. 1519 and 1527 state:
Article 1519
“In all dispositions inter vivos and mor-tis causa impossible conditions, those which are contrary to the laws or to morals, are reputed not written.”
Article 1527
“The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals.”
A testator cannot bequeath that which he does not own and any such legacy is void to that extent. C.C. arts. 1519 and 1639; Succession of Marion, 163 La. 734, 112 So. 667 (1927). The testator in this case knew that the concurrence of his surviving spouse in community was necessary to effectuate his wish that the Church acquire full ownership of the parcel of land he bequeathed “subject to payment by the Sun Methodist Church of ... $1,000.00 per acre ... for her part of this land”. Testator’s personal attorney explained to testator that the bequest of the land in full ownership to the Church “can’t be done and carried out unless Mrs. Mizell acquiesces in it and transfers her half interest” and testator’s response was “I’ve got that all worked out with her”. Time proved testator wrong.
The common law doctrine of cy pres was made a part of the general statutory law of Louisiana by Act 592 of 1954 as R.S. 9:2331. As amended by Act 43 of 1970 that statute provides in pertinent part that:
“In any case in which circumstances have changed since the execution or probate of a will containing a trust or conditional bequest for charitable, educational or eleemosynary purposes, or since the death of the donor who during his lifetime established a trust or made a conditional donation for any such purposes, and the change in circumstances is such *1376 as to render impractical, impossible or illegal a literal compliance with the terms thereof, the district court having jurisdiction of the succession of the testator ... may, upon petition of ... any heir, legatee or donee who in the absence or invalidity of such trust, conditional bequest or donation would have been entitled to any part of the property contained therein, ..., enter a judgment directing that such charitable trust, devise or conditional bequest or donation shall be administered ... in such manner ... as, in the judgment of said court, will most effectively accomplish as nearly as practicable under existing conditions the general purpose of the trust, will or donation, without regard to and free from any specific restriction, limitation or direction contained therein.”
R.S. 9:2384, as amended by Act 43 of 1970, insulates from invalidity “such trust, devise, conditional bequest ... for charitable, educational or eleemosynary purposes” unless there is a “clearly expressed intention to the contrary” simply “because the specific method provided by the testator ... for the accomplishment of the general purpose indicated by him is or becomes, for any reason, impractical, impossible or unlawful”.
In Succession of Tilton, 133 La. 435, 63 So. 99 (1913), the Supreme Court interpreted a legacy “to Home for Insane, $3,000.00” as being sufficiently specific although the location of such “home” was not stated, relying on extrinsic proof of the testatrix’ intention. The Court reiterated the principle that:
“The rules for the interpretation of wills ... are somewhat different in respect to bequests in favor of individuals and those in favor or charity.” 63 So. 99, 101.
The Court, in Tilton, supra, relied on principles stated in State v. Executors of McDonogh, 8 La.Ann. 171 (1853), as follows:
“This legacy clearly belongs to a class known in the civil law from the foundation of Christianity, by the name of legacies to pious uses. They are an element in the polity of municipal administrations in all countries which have preserved the features and jurisprudence of Roman civilization.
“Legacies to pious uses are those which are destined to some work of piety, or object of charity, and have their motive independent of the consideration which the merit of the legatees might procure to them. In this motive consists the distinction between these and ordinary legacies. Domat, lib. 4, tit. 2, section 6, § 2.

“They are viewed with special favor by the law; ... and with double favor on account of their motives for sacred usages and their advantage to the public weal. Domat loe. cit.
“The great consideration which the law attaches to these legacies, controls tribunals in the interpretation of them, and has secured for their support a doctrine of approximation which is coeval with their existence.” 8 La.Ann., at 246.
The Supreme Court applied the doctrine of approximation in Succession of Vance, 39 La.Ann. 371, 2 So. 54 (1887) and again in In Re Milne’s Succession, 230 La. 729, 89 So.2d 281 (1956).
In Milne’s Succession, supra, the court stated that R.S. 9:2331 et seq. “introduces the ‘Cy Pres’ doctrine into Louisiana Law”, then quoted from 10 Am.Jur., Charities, sec. 129, a passage that “the doctrine of cy pres adopted to this extent is in harmony with the equitable rule that a liberal construction is to be given to charitable donations to accomplish the general charitable intent of the donor” and concluded that “the doctrine of cy pres as applied in the United States is the doctrine of approximation” and that “the doctrine of approximation is a Civil Law doctrine which has been long recognized in Louisiana”, citing Vance, supra. 89 So.2d 281, 286-287.
“The meaning of the doctrine of cy pres is that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person ... who ... provided for it, it *1377 must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced, and the reason or basis for the doctrine is to permit the main purpose of the donor of a charitable trust to be carried out as nearly as possible where it cannot be done to the letter.” 14 C.J.S., Charities, § 52, p. 512-513.
It is not sacramental that in order for a legacy to create a charitable trust that the dispositive language state “I bequeath in trust” certain specified property. In Re Succession of Abraham, 136 So.2d 471, 482 (La.App.3rd Cir.1962), citing Succession of Percival, 137 La. 203, 68 So. 409 (1915).
The bequest of the plot of land cannot be delivered “to the letter” because Mrs. Mizell refused the Church’s tender of payment sent to her attorney with the resolution accepting the legacies of land and money. It is not possible for the Church to acquire complete ownership of the plot of land by testamentary disposition because Mrs. Mizell refused to sell her interest in the land. By applying the civil law doctrine of approximation, made statutory by R.S. 9:2331 et seq., to the legacy of the land, the Church acquires an undivided one-half interest in it as the district court correctly held.
The primary motive of the testator, gleaned from a reading of the testament as a whole, was to provide both land and money for the construction of a Methodist Church in Sun, Louisiana. In bequeathing to the Church a specified “plot of land ... as the site for the church and parsonage” which “building site will enable the buildings to be located on the new 4-lane highway” the testator did not intend to mandate the church and parsonage be built on that site or not at all. His secondary motive was that the church and parsonage be located on the parcel of land adjacent to the Mizell family cemetery where many of testator’s relatives and testator are interred. As correctly stated by the trial judge in his reasons for judgment, “if the testator’s primary purpose cannot be carried out in the manner designated by him, it may be carried out in some other appropriate manner such that the intent of the testator is not frustrated”. The court thus applied the doctrine of approximation or cy pres, although the term “cy pres” was not expressed by the judge, to the case and decreed the Church and Mrs. Mizell owners in indivisión of the plot of land.
At least insofar as the bequest of the land is concerned, plaintiff-appellant was aware, at the outset, of the applicability of the doctrine or principle of approximation or cy pres because he alleged in paragraph “7” of his petition that Mrs. Mizell “has not sold her interest in the above 300' X 300' parcel of land, and said bequest is impossible.” The alleged impossibility of the bequest of land is plaintiff-appellant’s bedrock defense and it is on this rock that he does not want the church to be built. Under our system of fact pleading, it matters not that plaintiff-appellant may not have been aware that he sought a declaration of the kind provided for by R.S. 9:2331 et seq. in order for that statute to be determinative of the merits of his suit.
BEQUEST OF MONEY
Just as the civil law doctrine of approximation, made a part of our statutory law by R.S. 9:2331 et seq., supports the bequest of the decedent’s ownership in the parcel of land, the same doctrine or principle supports the bequest of money to the Church.
MODIFICATION OF DECREE
C.C.P. art. 2164 is our authority for rendering “any judgment which is just, legal, and proper upon the record on appeal.” The Trial Court judgment decreed “that the Sun United Methodist Church is entitled to an undivided one-half interest in the 300' X 300' plot described in paragraph three of the Last Will and Testament of Lulu C. Mizell” and “that the bequest of $160,-000.00 to the Sun United Methodist Church for the purpose of building a United Methodist Church and parsonage and all other provisions of the Will are valid and enforceable”.
*1378 In his supplemental brief filed in response to our Order to Show Cause why the appeal should not be dismissed for untimeliness, plaintiff-appellant states in argument that “the Succession of Lulu Mizell is still under Administration and until such time as there has been an approved final account and the succession closed, none of the bequests or legacies in the Will are due and payable” and that “upon issuance of a final judgment of possession, the bequest to Sun United Methodist Church will become executory and must be paid in accordance with the provisions of the Will, which were found by the Trial Court to be valid and enforceable”.
This succession has been under administration since August 20, 1979; numerous actions have been taken by the testamentary executrix in performing her duties as the succession’s fiduciary; those actions include the filing of an “Accounting of Executor” on October 18, 1984 which has been requested and received by the Court to augment the record so that a more complete adjudication can be rendered in the interest of judicial economy and justice.
The certified public accountant’s letter of transmittal accompanying the accounting states that the compilation of receipts and disbursements for the period commencing with the date of decedent’s death, May 24, 1979, through December 31, 1979, “is limited to presenting in the form of a financial statement information that is the representation of Executrix”. Schedule “1” of the accounting period reflects that cash in banks on May 24, 1979 totaled $359,171.70 and Schedule “2” shows receipts for the period ending December 31, 1979 totaling $49,889.40. Schedules “3” through “6”, inclusive, reveal that disbursements for the same period to pay succession debts totaled $29,861.33 and Schedule “7” shows that cash in banks on December 31, 1979 amounted to $371,502.32.
The “Charge and Discharge Statement Resulting from Cash Transactions” for the period May 24, 1979 through May 31, 1984, a part of the accounting referred to above, reflects a net estate amounting to $604,-939.04, which figure includes $190,538.66 claimed by the executrix as owed her by the succession, leaving $414,400.38 uncommitted.
“All legacies ... to charitable, religious or educational institutions located within the State of Louisiana” are exempt from the state inheritance tax. R.S. 47:2402(4). C.C.P. art. 3372 authorizes “the legatees in a testate succession” to be “sent into possession of all or part of their respective legacies upon filing a petition for possession as provided in Articles 3031 through 3035” without waiting for “homologation of the final tableau of distribution” subject to the proviso that “the proceeding shall be contradictory with the executor”. Thus the law recognizes and provides for a partial placing in possession, contrary to plaintiff-appellant’s argument that “none of the bequests or legacies ... are due and payable” until the succession proceedings have been concluded.
Even if the executrix contemplates prolonging the administration to delay paying the cash bequest to Sun United Methodist Church, clearly intimated in plaintiff-appellant’s brief, the law does not condone such deliberate foot-dragging and accords to legatees a remedy when a succession representative does not fulfill the duties of a fiduciary.
The cash bequest became a debt or charge against the succession when the Trial Court declared in its written reasons for judgment on May 11, 1983 that the cash bequest was “valid and enforceable”. Until that time the ownership of the money was in dispute and constituted, at best, a contingent liability of the succession. The indebtedness of the succession for the legacy thus became ascertainable when the Trial Judge rendered his reasons for judgment. “An unliquidated claim is due from the time it becomes ascertainable. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978).” Roques v. Alfonso, 399 So.2d 1294, 1296 (La.App. 4th Cir.1981); C. C. art. 1938. Article 1938, as it read in 1983, provided that “all debts shall bear interest at the rate of twelve percentum from the time they become due, unless otherwise stipulated”. Miller v. Miller, 321 So.2d *1379 318, 321 (La.1975); Manuel v. Manuel, 443 So.2d 729, 731 (La.App. 4th Cir.1983).
The judgment of the Trial Court is amended to read as follows:
“IT IS ORDERED ADJUDGED AND DECREED that:
1. The Sun United Methodist Church be recognized as the owner of an undivided one-half interest in the 300' X 300' parcel of land described in paragraph three of the Last Will and Testament of Lulu C. Mizell;
2. The bequest of $160,000.00 to the Sun United Methodist Church is valid and enforceable and the testamentary executrix is ordered to deliver to Sun Methodist Church the sum of $160,000.00, together with legal interest thereon from May 11, 1983 until paid upon compliance by Sun Methodist Church with C.C.P. arts. 3372 and 3381;
3. All other provisions of the Will are valid and enforceable;
4. The petition of Floyd Stanley Mi-zell, seeking a declaration of nullity of certain legacies in the will, is dismissed at plaintiff’s costs.”
Plaintiff-appellant is case for all costs of this appeal. C.C.P. art. 2164.
AMENDED, AND AS AMENDED, AFFIRMED.