JOHNSON, J.
In this succession matter, Appellants seek review of the trial court's judgments sustaining an "Exception of No Right of Action and/or No Cause of Action," dismissing their petition of intervention with prejudice, and denying their exception of no right of action against Appellee. For the following reasons, we affirm in part, reverse in part, and remand the matter for further proceedings.
FACTS & PROCEDURAL HISTORY
James Griffin died on October 15, 2015, leaving a will dated July 12, 2001 with a codicil dated September 27, 2015. In January 2016, the executor, Thomas Graham, filed a petition to file the statutory testament and to confirm his appointment as testamentary executor, which was granted *1051 the same month. Thereafter, the executor filed a sworn detailed descriptive list of assets of the succession showing the total assets to be $8,238,350.59, and began administering the succession by liquidating assets and distributing funds as approved by the court.
According to Mr. Griffin's will, he left 2 ½% of his gross estate to his executor, Mr. Graham, and 2 ½% of his gross estate to Brad Cashio. He also made particular bequests to his cousins as follows: Janelle Laseter-$100,000; Erwin Graham-$100,000; Carolyn Patterson-$25,000; Jean Breland-$25,000; and Donald Herrin-$25,000. Mr. Griffin specifically provided that should any of the legatees, other than Erwin Graham, predecease him or fail to survive him for 90 days, their legacy "shall lapse and become part of the residue of [his] estate." He specified that if Erwin Graham predeceased him or failed to survive him for 90 days, his legacy was to be given to Erwin Graham's wife, Evelyn. In the event Evelyn predeceased him or failed to survive him for 90 days, the $100,000 legacy was to fail and fall into the residue of his estate. Mr. Griffin further left $25,000 to Sumrall United Methodist Church in Mississippi. Thereafter, Mr. Griffin bequeathed "the rest and remainder of [his] estate" in nine portions as follows: the Disabled Jockeys Fund-3/9ths; the Shoemaker Foundation-2/9ths; the Don MacBeth Memorial Fund-2/9ths; and the National Headquarters of the Salvation Army-2/9ths.
On January 27, 2017, the Jockey Club Safety Net Foundation ("Safety Net") filed a petition to be recognized as a substitute legatee. In its petition, Safety Net alleged that two of the four organizations to which the decedent made bequests in his will, namely the Shoemaker Foundation ("Shoemaker") and the Don MacBeth Memorial Fund ("Don MacBeth"), were no longer in existence. Safety Net asserted that it performs substantially the same identical charitable work as the two terminated charities and sought to be substituted in their place under the authority of La. R.S. 9:2331. The executor answered Safety Net's petition to be recognized as a substitute legatee and stated that he neither agreed nor opposed the petition and deferred any ruling on who should receive any bequests to the court.
Later, on March 8, 2017, two additional organizations, the Permanently Disabled Jockeys Fund, Inc. ("PDJF") and the Jockeys Guild, Inc. ("the Guild"), filed a joint petition to also be recognized as substitute legatees under La. R.S. 9:2331 for the two terminated organizations (Shoemaker and Don MacBeth). PDJF further sought to be recognized as a substitute legatee for a third organization, the Disabled Jockeys Fund, which it alleged ceased operations in 2004 but was never formally dissolved. PDJG asserted it was the successor in interest to the Disabled Jockeys Fund.[1]
In the interim, on February 21, 2017, Appellants, Carolyn Patterson, Jean Breland, Donald Herrin and Janell Laseter, filed a petition for intervention asserting they were the decedent's first cousins and his closest blood heirs and, therefore, were intestate heirs should any of the decedent's estate fall intestate. Appellants acknowledged in their petition that they were also particular legatees under the will, having been bequeathed $25,000, $25,000, $25,000 and $100,000 respectively. Appellants further acknowledged that the *1052 residual of the decedent's estate was left to four entities. They asserted that in the event of a lapsed legacy, the lapsed legacy would devolve to them by intestacy because the decedent's will did not provide a condition for a lapsed legacy.
Within their petition for intervention, Appellants asserted an exception of no right of action to Safety Net's petition to be recognized as a substitute legatee. Appellants alleged Safety Net did not have a right of action under the clear wording of La. R.S. 9:2331 because it did not meet the statutory requirements regarding who can bring a petition under the cy pres doctrine.[2]
Thereafter, Safety Net filed an "Exception of No Right of Action and/or No Cause of Action" to Appellants' petition for intervention. Safety Net asserted that Appellants failed to make a claim to any part of the decedent's patrimony in their petition for intervention but rather only filed an intervention to assert an exception. Safety Net argued Appellants lacked standing to intervene on the basis they had never been recognized by a judgment of possession to be the appropriate heirs entitled to assert a claim to the estate. Safety Net also averred that Appellants have no right of action to be recognized as substitute legatees because the decedent's intent was to leave the bulk of his estate to charity.[3] It further argued that Appellants have no cause of action to seek to undo the decedent's bequest to charities because the intent of the testator controls.
Both Appellants and Safety Net's exceptions were heard by the trial court on April 24, 2017. The hearing consisted solely of the argument of counsel-no evidence was offered during the hearing. The trial court took the matter under advisement and rendered judgment on May 22, 2017, overruling Appellants' exception of no right of action and sustaining Safety Net's "Exception of No Right of Action and/or No Cause of Action."
On May 31, 2017, Appellants filed both a motion for new trial and a notice of intent to apply for supervisory writs. The trial court denied the motion for new trial, and this Court denied Appellants' writ application on the basis the judgment at issue was a final, appealable judgment. Succession of Griffin , 17-395 (La. App. 5 Cir. 9/1/17) (unpublished writ disposition). This Court further noted that the May 22, 2017 judgment did not contain the necessary decretal language and advised the parties that the judgment needed to be amended before we could invoke our appellate jurisdiction. Upon motion of Appellants, and consented to by Safety Net, the trial court issued an amended judgment on September 12, 2017 to include the necessary decretal language, specifically overruling Appellants' exception of no right of action as to Safety Net's petition to be recognized as a substitute legatee, sustaining Safety Net's "Exception of No Right of Action and/or No Cause of Action," and dismissing Appellants' petition for intervention with prejudice. Appellants appeal this judgment.
ISSUES
On appeal, Appellants argue the trial court erred in sustaining Safety Net's "Exception of No Right of Action and/or No Cause of Action" and dismissing their petition *1053 of intervention because they are intestate heirs and, as such, they have a vested right for property of the estate that devolves by intestacy due to a lapsed legacy. Next, Appellants contend the trial court erred in overruling their exception of no right of action against Safety Net's petition to be recognize as a substitute legatee because La. R.S. 9:2331, or the cy pres doctrine, does not apply in this case.
DISCUSSION
Petition of Intervention-No Right of Action/No Cause of Action
We first address the trial court's sustaining of Safety Net's "Exception of No Right of Action and/or No Cause of Action," dismissing Appellants' petition of intervention.[4] Based on the use of "and/or" in the judgment, it is unclear from the trial court's ruling whether it sustained an exception of no right of action or an exception of no cause of action, or both.
There is no single exception of no right and/or no cause of action. Rather, the exceptions of no right of action and no cause of action are separate and distinct, with each serving a particular purpose with different procedural rules. Hurricane Fence Co. v. Jensen Metal Products , 12-956 (La. App. 5 Cir. 5/23/13), 119 So.3d 683, 688. "[T]he focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, while the focus in an exception of no cause of action is on whether the law provides a remedy against the particular defendant." Id. , quoting Badeaux v. Southwest Computer Bureau, Inc. , 05-612 (La. 3/17/06), 929 So.2d 1211, 1216-17. Further, evidence is permitted to support or controvert an exception of no right of action, but is not allowed to support or controvert an exception of no cause of action. La. C.C.P. art. 931 ; Ferguson v. Dirks , 95-560 (La. App. 5 Cir. 11/28/95), 665 So.2d 585, 587. Accordingly, we will review the propriety of both an exception of no right of action and an exception of no cause of action as to Appellants' petition for intervention.
An appellate court reviews a trial court's rulings on exceptions of no right of action and no cause of action de novo because the exceptions raise questions of law. Badeaux , 929 So.2d at 1217.
No Right of Action
Generally, an action can only be brought by a person having a real and actual interest in which he asserts. La. C.C.P. art. 681. The exception of no right of action tests whether the plaintiff has a real and actual interest in the action. See La. C.C.P. art. 927(A)(5). The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants a cause of action asserted in the suit. Badeaux , supra at 1217. The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Howard v. Administrators of the Tulane Educ. Fund , 07-2224 (La. 7/1/08), 986 So.2d 47, 60.
*1054 The party raising a peremptory exception bears the burden of proof. On the trial of a peremptory exception of no right of action, evidence is admissible to support or controvert the objection pleaded when the grounds do not appear from the petition. La. C.C.P. art. 931. In this case, neither party presented any evidence at the hearing on the exception; thus, this Court must decide, based on the allegations alone, whether Appellants belong to the class of persons to whom the law grants the cause of action asserted.
In In re Succession of Clark , 06-2210 (La. App. 1 Cir. 11/2/07), 977 So.2d 1000, 1003-04, the First Circuit succinctly summarized the laws regarding succession as follow:
There are two kinds of succession: testate and intestate. LSA-C.C. art. 873. Testate succession results from the will of the deceased, contained in a testament executed in a form prescribed by law. LSA-C.C. art. 874. Intestate succession results from provisions of law in favor of certain persons, in default of testate successors. LSA-C.C. art. 875. Intestate successors are also called heirs, and testate successors are also called legatees. LSA-C.C. art. 876.
In the absence of a valid testamentary disposition, the undisposed property of the deceased devolves by operation of law in favor of his descendants, ascendants, and collaterals, by blood or by adoption, and in favor of his spouse not judicially separated from him, in the order provided in and according to LSA-C.C. arts. 881 through 901. LSA-C.C. art. 880.
* * *
With respect to testate succession, testamentary dispositions are particular, general, or universal. LSA-C.C. art. 1584. A universal legacy is a disposition of all of the estate, or the balance of the estate that remains after particular legacies. LSA-C.C. art. 1585.
* * *
A legacy lapses when the legacy is declared invalid. LSA-C.C. art. 1589(6). Testamentary accretion takes place when a legacy lapses. Accretion takes place according to the testament, or, in the absence of a governing testamentary provision, according to LSA-C.C. arts. 1591 through 1596. LSA-C.C. art. 1590.
* * *
In the event that the testamentary provision addressing the issue of accretion is found not to govern the contingency involved in this case, the provisions of LSA-C.C. arts. 1591 through 1596 would apply. See LSA-C.C. art. 1590. Any portion of the estate not disposed of under LSA-C.C. arts. 1591 through 1595 devolves by intestacy. LSA-C.C. art. 1596.
In their petition for intervention, Appellants alleged that the decedent was never married and had no children. They asserted that the decedent's mother was deceased, as well as her two siblings. Appellants contended they are the decedent's cousins, as further evidenced by being so named in the decedent's will, and the closest heirs by blood; thus, they averred they are would-be heirs should any of the decedent's estate fall intestate.
Absent a valid testamentary disposition, Appellants, as decedent's cousins, would stand to inherit from Mr. Griffin under the law of intestate succession. Although Mr. Griffin left a will, there are several issues pertaining to whether there is a lapsed legacy and, if so, whether testamentary accretion applies or whether the lapsed legacy devolves intestate. The exception of no right of action should not be granted simply because there is a valid defense to the plaintiff's claim.
*1055 Ferguson , 665 So.2d at 587-88. As potential would-be heirs, we find that Appellants clearly belong to the class of persons that has a legal interest in the subject matter of the litigation at issue and, thus, have a right of action.
No Cause of Action
Regarding the issue of whether the petition for intervention states a cause of action, we consider whether the law extends a remedy to anyone under the factual allegations of the petition. Badeaux , 929 So.2d at 1217. As noted above, no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. See La. C.C.P. art. 931. Therefore, an exception of no cause of action is triable solely on the face of the petition and all well-pleaded allegations of fact are accepted as true. Wood v. Omni Bancshares, Inc. , 10-216 (La. App. 5 Cir. 4/26/11), 69 So.3d 475, 479. The issue at the trial of the exception of no cause of action is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Whether the plaintiff can prove the allegations set forth in the petition is not determinative of the exception of no cause of action, and the court may not go beyond the petition to the merits of the case. Clulee v. St. Pierre , 13-881 (La. App. 5 Cir. 5/14/14), 142 So.3d 83, 86.
An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Badeaux , 929 So.2d at 1217. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Id .
There are several circumstances under which a legacy may lapse, one of which includes when the legatee is incapable of receiving the legacy at the death of the testator. La. C.C. art. 1589. In the event of a lapsed legacy, accretion takes place according to the will. La. C.C. art. 1590. If the will does not provide for a lapsed legacy, accretion takes place according to La. C.C. arts. 1591 - 1596. These articles provide that a lapsed legacy that is joint accretes ratably in favor of the other joint legatees. La. C.C. art. 1592. A lapsed legacy that is particular or general accretes in favor of the successor who, under the will, would have received the thing if the legacy had not been made. La. C.C. art. 1591. A lapsed legacy that is neither disposed of through the will nor through the accretion rules pertaining to particular or general legacies, accretes to the universal legatee or devolves by intestacy if there is no universal legatee. La. C.C. arts. 1595 - 96. Thus, in order to state a cause of action to recover a lapsed legacy, there must be factual allegations that a legacy has lapsed and that it accretes to the plaintiff though one of the above means.
Upon review of Appellants' petition for intervention, we find it fails to state a cause of action for recovery of a lapsed legacy. The petition alleges that Appellants are heirs of Mr. Griffin and are also legatees under his will. It further asserts the additional existence of four separate general legatees-the Disabled Jockey's Fund, Shoemaker, Don MacBeth and the National Headquarters of the Salvation Army-to which Mr. Griffin left the residue of his estate. The petition then sets forth the law pertaining to how a legacy lapses and the general rule regarding accretion, by citing various code articles. However, the petition fails to allege that any of the legacies lapsed, the basis for the lapsed legacy, or identify which of the lapsed legacies, if any, devolve by intestacy. Thus, it fails to allege all the elements *1056 necessary for Appellants to state a cause of action for recovery of a lapsed legacy.
Under La. C.C.P. art. 934,
[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed. [Emphasis Added.]
To the extent the trial court sustained Safety Net's exception of no cause of action, we find the trial court was correct. However, we find the trial court erred in failing to allow Appellants the opportunity to amend their petition to set forth sufficient allegations to state a valid cause of action.[5] See La. C.C.P. art. 934 ; Stoll v. Stich , 14-261 (La. App. 5 Cir 12/16/14), 166 So.3d 250, 253-54.
Petititon to Substitute Legatee-No Right of Action
We now turn to Appellants' exception of no right of action to Safety Net's petition to be recognized as a substitute legatee.[6] In its petition, Safety Net asserted that two charitable legatees in the will, Shoemaker and Don MacBeth, had terminated their existence. It attached the certificates of dissolution from the Secretary of State for the State of California as exhibits to its petition-one filed August 2009 showing that Shoemaker had terminated and one filed July 2014 showing that Don MacBeth had terminated, both before Mr. Griffin died. Safety Net alleged that it performs substantially the same charitable work as Shoemaker and Don MacBeth and, thus, should be substituted as legatees in the will under La. R.S. 9:2331. Appellants filed an exception of no right of action claiming that Safety Net is not a person or entity that can assert the cy pres doctrine, or right to be substituted as a legatee, under La. R.S. 9:2331.
Louisiana Revised Statute 9:2331, which falls under the Chapter entitled "Trusts for Charitable, Benevolent, or Eleemosynary Purpose," provides:
In any case in which circumstances have changed since the execution or probate of a will containing a trust or conditional bequest for charitable, educational or eleemosynary purposes, or since the death of the donor who during his lifetime established a trust or made a conditional donation for any of such purposes, and the change in circumstances is such as to render impractical, impossible or illegal a literal compliance with the terms thereof, the district court having jurisdiction of the succession of the testator or of the domicile of the donee ... may, upon petition of a trustee, or of the person or corporation having custody or possession of the property subject to said trust, conditional bequest or donation or of any heir, legatee or donee who in the absence or invalidity of such trust, conditional bequest or donation would have been entitled to any part of the property contained therein, in accordance with the procedure hereinafter set forth, enter a judgment directing that such charitable trust, devise or conditional *1057 bequest or donation shall be administered or expended in such manner (either generally or specifically defined) as, in the judgment of said court, will most effectively accomplish as nearly as practicable under existing conditions the general purpose of the trust, will or donation, without regard to and free from any specific restriction, limitation or direction contained therein.
This statute was enacted in 1954 and codified the cy pres doctrine, or the doctrine of equitable approximation, in Louisiana law. Succession of Milne , 230 La. 729, 89 So.2d 281, 286-87 (1956).
The Louisiana Supreme Court has explained the cy pres doctrine as one of equity by stating the following:
Where the terms of a gift in trust for charitable purposes were originally precise and complete, but have, by lapse of time or otherwise, become unsuited under the altered circumstances to carry out the general intent of the founder, a court of equity may regulate the funds of the charity.
The rule of equity on this general subject seems to be clear that, when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity; for equity will substitute another mode, so that the substantial intention shall not depend upon the formal intention. The doctrine of cy pres adopted to this extent is in harmony with the equitable rule that a liberal construction is to be given to charitable donations to accomplish the general charitable intent of the donor. Thus the court to carry out the testator's intentions, will execute the trust cy pres by sanctioning a scheme to modify it, even though it requires elimination of a subsidiary condition, compliance with which has become impracticable. [Emphasis in original.]
Succession of Milne, supra , quoting 10 Am. Jurisprudence, Charities, sec. 129, p. 680.
More recently, the meaning of the cy pres doctrine was explained in In re Succession of Mizell , 468 So.2d 1371, 1376-77 (La. App. 1st Cir. 1985), reversed on other grounds , 475 So.2d 765 (La. 1985), quoting 14 C.J.S., Charities, § 52, pp. 512-13, as follows:
The meaning of the doctrine of cy pres is that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person ... who ... provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced, and the reason or basis for the doctrine is to permit the main purpose of the donor of a charitable trust to be carried out as nearly as possible where it cannot be done to the letter.
While the cy pres doctrine is rooted in equity, it has been codified under Title II, "Of Donations Inter Vivos (Between Living Persons) and Mortis Causa (In Prospect of Death), and the legislature has seen fit to limit its application to certain situations. Most importantly, the cy pres doctrine is limited only to those cases involving "a will containing a trust or conditional bequest for charitable ... purposes." In this case, Mr. Griffin's will does not contain a trust or a conditional bequest and it does not create a trust. Rather, the bequests to the four charitable organizations was simply stated as, "I give all of the rest and remainder of my estate wherever located and of whatever nature in nine portions," which was to be divided among four organizations in specified fractional amounts.
*1058 Additionally, under the clear wording of the statute, application of the cy pres doctrine may only be requested by a trustee, a person or corporation having custody or possession of the property subject to the trust or conditional bequest, or an heir, legatee or donee, who in the absence or invalidity of the trust or conditional bequest, would have been entitled to any part of the property. La. R.S. 9:2331. Safety Net does not fall within any of these named groups that may petition for the application of cy pres . Thus, Safety Net does not have a right of action to petition the court to be recognized as a substitute legatee, and the trial court erred in overruling Appellants' exception of no right of action.
In its appellee brief, Safety Net argues that the cy pres doctrine is not limited by the terms of the statute, specifically La. R.S. 9:2331, and cites Adams v. CSX R.R. , 12-139 (La. 4/13/12), 84 So.3d 1289, in support of its position. In Adams , the Louisiana Supreme Court discussed cy pres funds, noting that
Cy pres funds typically result from class action lawsuits when it is either impossible or impractical to distribute the funds directly to the individuals who were injured. In those situations, the court may order that the funds be used for grants to benefit the class members indirectly or as near as possible in order to remedy or compensate for the harm to the class members.
Id. at 1290, n. 1.
We acknowledge that the cy pres doctrine has been applied in areas of law outside of wills and trusts; specifically, as evidenced by Adams , it is used in class action settlements to facilitate the equitable disbursement of class action settlement funds. Cy pres is an equitable doctrine that has existed in our jurisprudential law for more than a hundred years. See In re Succession of Mizell , 468 So.2d at 1372. In 1954, the legislature saw fit to codify the cy pres doctrine in La. R.S. 9:2331 with regards to wills and trusts. In doing so, the legislature set forth certain requirements before the doctrine could be applied in cases involving wills or trusts. Conversely, the legislature has not codified cy pres for purposes of its application to class actions, and thus there are no statutory requirements for the application of cy pres in class action cases.
Even though the cy pres doctrine is rooted in equity, we cannot, contrary to Safety Net's argument, ignore the clear language of the cy pres statute-specifically enacted for wills and trusts-and apply the cy pres doctrine in this case absent the required circumstances set forth in La. R.S. 9:2331. To do so would require us to disregard the law.
DECREE
Based on the foregoing, we reverse that portion of the trial court's September 12, 2017 judgment sustaining Safety Net's exception of no right of action and affirm that portion of the trial court judgment sustaining Safety Net's exception of no cause of action, but reverse that portion of the judgment dismissing Appellants' petition of intervention. We remand the matter to the trial court with instructions that it afford Appellants an opportunity to amend their petition for intervention to remove the grounds for the objection of no cause of action, if they are able to do so, within a reasonable time delay pursuant to La. C.C.P. art. 934.
Furthermore, we reverse the trial court's judgment overruling Appellants' exception of no right of action and enter judgment sustaining the exception of no right of action against Safety Net and dismiss its petition to recognize substitute legatee with prejudice.
*1059 Each party is to bear his own appeal costs.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS

Nothing in the record shows the executor answered PDJF and the Guild's petition to be recognized as substitute legatees.

We note that Appellants did not file a similar exception to the PDJF and the Guild's petition to be recognized as substitute legatees.

We point out that Appellants never sought to be substituted as legatees, as they were already legatees in the will. Rather, Appellants asserted claims as heirs to any intestate portion of the estate.

As discussed infra , we conclude that Safety Net has no right of action in this case. Thus, it follows that Safety Net has no standing to except to Appellants' petition for intervention. See La. C.C.P. art. 921 -"An exception is a means of defense , other than a denial or avoidance of the demand, used by the defendant , whether in the principal or an incidental action, to retard, dismiss, or defeat the demand brought against him." (Emphasis added.) However, we notice Appellants' failure to disclose a cause of action under our authority set forth in La. C.C.P. art. 927(B).

By this ruling, we in no way express any opinion as to how Mr. Griffin's estate devolves.

We note that as plaintiffs in intervention, Appellants have no standing under La. C.C.P. art. 921 to except to Safety Net's petition to substitute legatee. However, as we previously noted, we use our authority under La. C.C.P. art. 927(B) to recognize on our own Safety Net's lack of a right of action in this matter.